MARTIN WEISSMAN, MARTIN WEISSMAN, as President of Bakery & Confectionery Workers' Union of America, Local No. 324, of Miami, affiliated with The American Federation, *et al.,* v. WILLIAM F. JUREIT.

181 So. 898.
Opinion Filed June 8, 1938.

*Gramling & Gramling, Whitfield & Whitfield,* for Appellants;

*James H. Willock,* for Appellee.

CHAPMAN, J.—The parties to this cause in this opinion will be referred to as plaintiff and defendants as they appeared in the lower court. This cause is here on appeal from a final decree dated December 17, 1937, made and entered by the Honorable H. F. Atkinson, a Judge of the Circuit Court of Dade County, Florida, permanently enjoining and restraining the defendants below from:

"1. In any manner interfering with the manufacture, sales and delivery of the products of the plaintiff.

"2. In any manner interfering with the representatives, agents and employees of the plaintiff now employed or those who may hereafter be employed by him, in the lawful discharge of their duties to the plaintiff.

"3. In any manner interfering with the business of the plaintiff by intimidation, coercion, threats, force or violence against the patrons of the plaintiff or purchasers of his products.

"4. Further threats, coercions, for or intimidation of any kind directed against the plaintiff, his servants, agents, employees, patrons, and purchasers of his products designed to force the plaintiff to sign an agreement with said association or its successors.

"5. Picketing the bakery operated by the plaintiff, William F. Jureit, and any and all stores handling the bakery products of the said William F. Jureit.

"6. Further threats, force, coercion or intimidation of any kind directed against each and every dealer in products of the plaintiff or those who may hereafter become dealers of the plaintiff with the intent to cause him or them to cease handling the products of the plaintiff.

"7. The use of signs, placards or other writings in the attempt to influence the public adversely to the plaintiff, his business and its products."

While the decree appealed from is presented here under several separate assignments, it seems that the case can be disposed of under one general assignment, viz.: Are the findings of the Chancellor as expressed in the final decree sustained by the evidence adduced and the law applicable thereto?

In the case of Paramount Enterprises, Inc., v. Mitchell, 104 Fla. 407, 140 So. 328, the appellant sought a restraining order against certain defendants therein named from pick-

eting, or otherwise interfering with its theater business. This Court in affirming the decree of the lower, in part, said:

"The law recognizes the right of the trades, crafts, guilds, and arts, whether composed of skilled or unskilled workmen, to organize and invite others to join them. When organized, they may use the organization to promote their social, civic, and economic betterment, among other things, that of securing as much as they can for their labor. Employers may also organize for similar purposes and for the purpose of securing the best possible return on their capital. Every other profession and business may organize for like purposes; but when organized, the law recognizes no distinctions among them, but all must conform alike to its decrees and mandates. Every organization including its individual members is bound and protected by social and constitutional guarantees that all must respect, among which is the right to peacefully own property and enjoy the pursuit of a trade, business, or profession. The law will not permit such rights to become a prey to those who would without just cause invade them.

"It is well settled that employees have a right to combine and fix the amount of their daily wage and to whom they will sell it. It is also true that when not under contract they may quit the services of another at any time they desire. It is alike true that employers have the right to determine the daily wage they are willing to pay and whom they will employ. Members of a labor organization may persuade their confederates not to work except on payment of an established wage; they may, without coercion, bring their cause to the court of public opinion in a peaceful manner; but neither employer nor employee is permitted to use threats, force, violence, coercion, or intimidation in doing this, nor will employer or employee be permitted to present

urge, or advertise his cause by false statements, libelous attack, insulting language, derogatory implications, or by other means calculated to become a nuisance, obstruct traffic, or in any way to impede or hinder the orderly course of business or other relations. Note 27 A. L. R. 651. Under any other rule every legitimate business would be subject to the whim of anyone having opposing views as to the method of its operation. * * *

"One's business is recognized as property. Both are protected by due process of law and it is as reprehensible to destroy or injure one as it is the other. This postulate does not overlook the fact that one business may be located adjacent to or in the vicinity of another and by fair competition the former may cripple the latter and ultimately drive it out of business, but such damage as may be sustained is *damnum absque injuria,* as fair and free competition is encouraged both by public policy and the law. This is very different from destruction by malicious mischief. No man or set of men with mere personal interests to serve and no legitimate interest to protect, may, by malicious means, destroy the business of another. To congregate about the entrance of one's place of business and there use force, malice, or coercion to drive away its patronage or discredit its business is not free competition and is a form of malevolence that may be legally repressed.

"Picketing is relative. A set of facts that would constitute picketing in one community might be far from doing so in another. Picketing on the part of a blacksmith's apprentice or an automobile mechanic in an isolated community would excite little interest or comment, but in highly industrialized communities where every trade, business, or profession is supported wholly or in part by these industries, their influence so permeates the social and economic structure that public sentiment becomes very sensitive to

the causes and tension arising from an industrial dispute. Under such circumstances picketing is often fraught with disastrous consequences and should not be permitted to continue."

See Great Northern Ry. Co. v. Local Great Falls Lodge of I. A. of M., 283 Fed. 557; Duplex Printing Co. v. Deering, 254 U. S. 443, 41 Sup. Ct. 172, 65 L. Ed. 349.

The record shows that the plaintiff owned and operated a bakery in the City of Miami and gave employment to a number of people. His products were sold at different retail businesses in said city and delivered over a wide area by twenty trucks. It appears that M. Weissman, a representative of one of the labor unions, approached the plaintiff and requested him to sign a contract in behalf of the union labor working in the bakery. He read the contract and while finding no fault therewith refused, upon the advice of counsel, to sign the same. The contract, broadly speaking, had as its objectives: (a) the employment of union labor; (b) the number of hours reduced to ten hours per day; (c) the scale of wages were the same; (d) sanitary working place and conditions around the bakery; (e) other reasons unnecessary to recite. The record shows that if the contract had been signed the labor would have continued with a few minor changes, as each party would have been benefited thereby.

M. Martin Weissman, president of the union, testified that he contacted the plaintiff and tried to reach terms with him by letting the wage scale stand but reduce a day's work to ten hours, but the same was refused. The proposed contract was offered in evidence and fully considered.

William Clayton Wills was a member of the union and worked with the plaintiff for five weeks. He was required to work six days a week and averaged daily 11 or 11½

hours and on each Friday he put in about 15 hours. White and colored labor worked at the plant and shared the toilet and bath facilities.

David Carlson testified for the defendant as follows: He was a member of the union and had worked at the bakery for some time and was one joining in the strike; the men worked for 12½ to 15 hours per day and that the witness received $27.00 per week. He received no pay for extra time; the toilet and bathing facilities were shared by white and colored employees; his time averaged daily 12 hours.

O. E. Headly was a member of the union and had worked at the plant seven months. His salary was $18.00 per week and worked more than ten hours per day, with at least 75 hours per week. He had a family and was paying $30.00 per month rent. Q. "Would you describe the toilet facilities on the premises of the Jureit Bakery?" A. "Well, they had a toilet and shower on the second floor, they had two bowls there and the colored help used it the same as the white people; they used the same shower. If they had another toilet place to be used by the colored porters there never was any sign stating the fact; the white and colored both used it." "I joined in the strike as the hours were too long and the conditions bad."

Walter Hoyt testified he was connected with the union and the purpose of the strike was to get better conditions in regard to hours and wages. If a strike is called the pickets are instructed to walk in the front and on the edge of the sidewalk, they must not talk to anybody, or have anything to do with anybody, it must be peaceful, no commotion of any kind, and they never put more than two in front of any one place of business.

The plaintiff in rebuttal testified that the strike cost him, in his opinion, $3,600.00; his plant was worth $69,000.00;

the plant at all times was sanitary and was approved by the health department of the city.

When the testimony is considered it is readily seen that the material allegations of the bill of complaint as denied by the answer are each stronger than the evidence in support thereof. The burden of proof rests upon the plaintiff to establish by a preponderance of testimony each material allegation of the bill of complaint. The *allegata* and *probata* must correspond in equity, and, however full the proof may be, it is insufficient unless the fact is averred. See Pinney v. Pinney, 46 Fla. 559, 35 So. 95.

Let us agree on the fact that picketing was done by some members of the union. The burden was on the plaintiff to show that the members of the labor organization resorting to picketing used threats, force, violence, coercion, or intimidation, which has not been established by the evidence. While it is true that the plaintiff testified to certain losses to his business incurred by this method, at most his conclusions were not only vague and indefinite, but highly speculative and insufficient upon which to predicate a decree. We do not think the evidence sufficient to sustain the decree appealed from. See *Ex parte* Heffron, 179 Mo. App. 639, 162 S. W. 652.

The decree appealed from is hereby reversed for further proceedings not inconsistent with this opinion. It is so ordered.

WHITFIELD, TERRELL, BROWN and BUFORD, J. J., concur.