385 So.2d 682 (1980)
ADOPTION HOT LINE, INC., a Domestic Corporation Doing Business in Florida, Appellant,
v.
STATE of Florida, DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, DISTRICT XI, ex rel. Max B. Rothman As District Administrator, Appellee.
No. 79-2299.
District Court of Appeal of Florida, Third District.
June 10, 1980.
Rehearing Denied July 11, 1980.
*683 Alan S. Kessler, Miami, for appellant.
Morton Laitner, for appellee.
Before HENDRY and SCHWARTZ, JJ., and VANN, HAROLD R. (Ret.), Associate Judge.
HENDRY, Judge.
This appeal has been brought before us pursuant to Fla.App. Rule 9.130(a)(3)(B), that is; proceedings to review a non-final order which grants, continues, modifies, denies or dissolves an injunction. The trial court has entered an order enjoining appellants' activities. Appellants contend that the trial court abused its discretion in granting the temporary injunctive relief.
Appellee, State of Florida, Department of Health and Rehabilitative Services, District XI, ex rel. Max B. Rothman as District Administrator, filed suit for temporary and permanent injunction against Lawrence and Henrietta Lauer, doing business as Adoption Hot Line, Inc., a Florida corporation, alleging inter alia that the appellants/defendants were operating an unlicensed child-placing agency and the minimum standards under the Florida Statutes and the Florida Administrative Code had not been met by the incorporators and other personnel connected with the organization. Appellants have maintained that they do not, in fact, "place children" but rather merely act as a referral and counselling service for pregnant women and provide the names of these women to prospective adoptive parents through the intermediary of the prospective parents' choice; the alleged intermediaries are said to usually be doctors and lawyers.
The subject order reads in relevant part:
1. That Adoption Hot Line, Inc. is enjoined temporarily from, in any manner of advertising for children for adoption, or any manner of advertising for parents for unborn children, for purposes of adoption or in any manner advertising or soliciting the offering of adoptive services until further Order of this Court.
2. Adoption Hot Line, Inc. is not prohibited from advertising Adoption Hot Line in the newspaper,[1] but they are enjoined from in any way accepting any solicitations for the placement of children through them either through that advertisement or any other manner. Such advertising by Adoption Hot Line, Inc. shall not be for the purposes of attempting to obtain names of pregnant mothers nor prospective adoptive children nor prospective adoptive parents for the purposes of placing them together.
*684 The most significant allegations made by appellees regarding the activities of the Lauers and Adoption Hot Line, Inc. are: (1) that the appellants/defendants did, in fact, commence the process of placing a 17-month old child; (2) that there has been no licensing by the Department of Health and Rehabilitative Services as a child-placing agency, pursuant to Chapter 63, Florida Statutes, and/or the Florida Administrative Code; (3) that no such licensing has been applied for or sought by the appellants; (4) appellants are neither licensed physicians or attorneys nor have they been qualified to act as intermediaries for the appellee-department; (5) the newspaper advertising placed and published at the behest of appellants states that a "young couple wishes to adopt Caucasian child, any age, Adoption Hot Line" followed by two telephone numbers. We believe that the record supports the action taken by the trial court in granting the temporary injunction. It is well established that when a permanent injunctive proceeding would move too deliberately to provide necessary relief, the court may properly grant a temporary injunction, the function of which is to preserve the status quo until the final hearing.[2]Uni-Chem Corporation of Florida v. Maret, 338 So.2d 885 (Fla. 3d DCA 1976); Tamiami Trail Tours, Inc. v. Greyhound Lines, Inc., 212 So.2d 365 (Fla. 4th DCA 1968). The controlling reason for the very existence of the power to grant a temporary injunction is that the court may thereby prevent a threatened or continuous irremediable injury which might otherwise occur before the plaintiff's claim could be thoroughly investigated. Tamiami Trail Tours, Inc., supra, 212 So.2d 365; Murphy v. Daytona Beach Humane Society, Inc., 176 So.2d 922 (Fla. 1st DCA 1965).
In the case before us the crucial issue of whether Adoption Hot Line, Inc. is a corporation in operation for the purpose of child-placing (in contravention of the prevailing law in the area of adoption), or whether it is actually a referral agency (as appellants contend), has yet to be determined by the trial court. However, the short record compiled thus far in the cause supports the trial court's action in granting the temporary injunction. The probable injury to the public is evident in the obvious and immediate potential for a black-market-baby-sale network, attendant with the improper and highly probable "unsuitable"[3] placements of children, in violation of Florida law. See Tamiami Trail Tours, Inc., supra, 212 So.2d 365.
The trial court has not abused its discretion; we concur in its issuance of the temporary injunction.
Appeal therefrom is dismissed.
Dismissed.
SCHWARTZ, Judge (dissenting).
As I view the record below, there were neither allegations in the complaint[1] nor *685 any evidence to the effect that the appellant's activities have been, much less will be, in fact unlawful. Even more clearly, there was nothing close to a showing that there was, as the court says, a "probable injury to the public ... in the obvious and immediate potential for a black-market-baby-sale network, attendant with the improper and highly probable `unsuitable' placements of children, in violation of Florida law." [e.s.] I believe therefore that there are two separate reasons why the order on appeal should be reversed. First, it is well-settled that injunctive relief "should not be granted where there is substantial dispute as to the legal rights involved and the right of complainant is doubtful, or is not clear." Dade Enterprises, Inc. v. Wometco Theatres, Inc., 119 Fla. 70, 160 So. 209, 214 (1935). Secondly, as stated in Cramp v. Board of Public Instruction of Orange County, 118 So.2d 541, 544 (Fla. 1960):
It has been consistently held that in order to support the granting of a temporary restraining order, the allegations of the complaint must be clear, distinct, and unequivocal. The plaintiff by his complaint must likewise clearly demonstrate that irreparable injury would follow the denial of the injunction. Interstate Lumber Co. v. Fife, 70 Fla. 178, 69 So. 715; Drew Lumber Co. v. Union Inv. Co., 66 Fla. 382, 63 So. 836; Stanton v. Harris, 152 Fla. 736, 13 So.2d 17; Weissman v. Jureit, 132 Fla. 661, 181 So. 898.
Accord, e.g., Davis v. Wilson, 139 Fla. 698, 190 So. 716, 719 (1939) ("[T]o make out a case for an injunction, it must appear that there is at least a reasonable probability, not a bare possibility, that a real injury will occur if the writ is not granted.")
The majority suggests that the temporary injunction serves merely to "preserve the status quo." This is simply not the case. The order forbids the defendant from continuing to carry on virtually every activity in which it had been engaged and thus effects a complete change from the existing situation. In Tamiami Trail Tours, Inc. v. Greyhound Lines, Inc., Southern Greyhound Lines Division, 212 So.2d 365 (Fla. 4th DCA 1968), upon which the majority relies, the court actually reversed a temporary injunction because, as in this case, it disturbed the status quo and there was no showing of irreparable injury. See also Jennings v. Perrine Fish Market, Inc., 360 So.2d 434, 435 (Fla. 3d DCA 1978); DoCouto v. ITT Community Development Corporation, 347 So.2d 1059 (Fla. 1st DCA 1977), cert. denied, 357 So.2d 186 (Fla. 1978); State, Department of Health and Rehabilitative Services v. Artis, 345 So.2d 1109 (Fla. 4th DCA 1977); Quadomain Condominium Association Inc. v. Pomerantz, 341 So.2d 1041 (Fla. 4th DCA 1977); City of Coral Springs v. Florida National Properties, Inc., 340 So.2d 1271 (Fla. 4th DCA 1976); Fla.R.Civ.P. 1.610(b). Because I believe that the defendant's actions may not be lawfully enjoined on the speculative, even fanciful, basis asserted below and approved here, I would reverse the order under review.
NOTES
[1] The apparent rationale for the court's having specifically exempted advertising from its order is to preserve appellants' constitutionally-protected right to freedom of speech.
[2] Of course, a temporary injunction does not purport to decide any material points in controversy, and a denial thereof does not preclude the granting of a permanent injunction at the conclusion of the case. A temporary injunction is clearly not conclusive; its provisions may be merged in, or dissolved by, the final decree, North Dade Water Co. v. Adken Land Co., 114 So.2d 347 (Fla. 3d DCA 1959), or it may be attacked while the suit is pending. Fla.R.Civ.P. 1.610(c).
[3] § 63.092, Fla. Stat. (1979), addresses the "suitability of the intended adoptive home" and the fact that a study and a report are required to be undertaken by the "department or any other qualified agency or person designated by the department."
[1] On the issue of "irreparable harm," the complaint alleged only:

24. The Plaintiff alleges and fears that child placing agencies such as Adoption Hot Line, Inc. may fall into the hands of unscrupulous individuals and such child-placing agencies would deal in the sale of black market babies.
25. The Plaintiff fears that parties such as the Lauers, who are without proper educational background, could create unwarranted hopes in the hearts of prospective parents causing which upon Adoption Hot Line's failure to find a child for said prospective parents could cause grave cases of mental distress.
26. Plaintiff alleges that allowing ill trained individuals such as the defendants, to handle the delicate task of dealing with prospective adoptive parents and pregnant females could create serious trauma in these individuals lives.
COUNT V
27. Plaintiff alleges that Adoption Hot Line, Inc. is an unlicensed child-placing agency which is utilizing misleading advertising and not properly trained individuals to deal with the very delicate situation of hopeful prospective adoptive parents and distressed pregnant females. To allow unlicensed child-placing agencies to exist in the State of Florida such as Adoption Hot Line, Inc. could open up the field for black marketers in babies and create numerous potential hazards to the mental health and well being of pregnant mothers who are willing to give up their children and prospective adoptive parents. [e.s.]