DOWNEY, Judge.
This appeal involves the review of two nonfinal orders: an order denying appellants’ motion to dismiss appellee’s com *251 plaint, and an order granting a temporary injunction against the appellants.
Appellee, State of Florida, Department of Health and Rehabilitative Services (HRS), filed a complaint in five counts seeking to enjoin appellants, Gitelman and National Adoption Counseling Service, Inc. (National) from engaging in unlicensed referral and child-placing activities in violation of Chapter 63, Florida Statutes (1984).
The complaint, in pertinent part, alleged that HRS is authorized to bring this suit for injunctive relief pursuant to section 381.031(3)(b)(3), Florida Statutes (1984); that National and Gittelman are not a licensed child-placing agency or intermediary as defined in section 63.032(7) and (8), Florida Statutes (1984); and that National and Gitelman operate an unlawful referral service pursuant to section 63.212(l)(g), Florida Statutes (1984). In Count I it is alleged that National, a Florida corporation, placed classified advertisements in numerous news publications throughout the nation requesting expectant mothers who do not want to keep their offspring to contact National, who represents a childless couple interested in an adoption; that when contacted National obtains relevant personal information about the expectant mother, which it utilizes in conjunction with information gathered about the prospective adoptive parents. The prospective adoptive parents sign a contract with National in which they agree to pay a fee to National for locating a suitable natural mother willing to give up her baby for adoption by these prospective adoptive parents. Upon agreement of the respective parties and payment of the fee, National furnishes to counsel of the adoptive parent’s choice and relevant information regarding the natural expectant mother. This activity is alleged to be a referral contrary to section 63.-212(l)(g). National is charged in Count II with operating as a child-placing agency in violation of sections 63.207 and 63.212(1), Florida Statutes (1984), Count III simply sets forth Rule 1.610(b), Florida Rules of Civil Procedure, regarding temporary restraining orders. Count IV sets forth certain fears experienced by HRS regarding unscrupulous individuals and agencies without contending National qualifies as such an agency. In short, Count IV alleges purely speculative possibilities that could come to pass. Finally, Count V charges that National is an unlicensed child-placing agency which utilizes misleading advertising and involves improperly trained people, and further requests on immediate preliminary injunction to protect the welfare of pregnant females and prospective adoptive parents in their dealings with National.
Evidentiary hearings were held over a period of several days, resulting in the trial court’s issuance of a temporary injunction prohibiting National from referring the names, addresses, and telephone numbers of any pregnant women or women with children to their clients “or attorneys or agents thereof.” Furthermore, the order enjoined National from dealing in the placement of advertising or counseling for adoptions or any activity related to the placing of children for adoption.
In the main, the evidence shows that, while National is a Florida corporation with its principal place of business in Coral Springs, Florida, its business is conducted outside the state. All of its advertising is placed in out of state publications and, with one exception to be mentioned hereafter, the natural mothers and adoptive parents live in other states. The only semblance of any activity that would constitute a nexus with Florida is that National’s contract with the adoptive parents says it will “commence to search, for and on behalf of the client, both locally and nationally for a pregnant woman who desires to give up her child for adoption.” The testimony is that National does not search in Florida. The contract also provides that, in the event of dispute over the contract, it shall be construed in accordance with the laws of Florida and the parties agree to submit to the jurisdiction of the Florida courts. The only evidence of activity with Florida residents was precipitated by an employee of HRS who simply set National up by calling Gitelman, identifying herself as a potential *252 parent, and inquiring about National's operation. She advised Gitelman that she learned of National through an out of state adoptive couple who had sucessfully adopted through National. Gitelman then explained the operation and, at her request, sent her a copy of National’s contract.
To be entitled to a temporary injunction the petitioner must allege and show that he has a clear legal right thereto; that he has no adequate legal remedy; and that irreparable harm will result from inaction by the court. Walsh v. French, 409 So.2d 1131 (Fla. 4th DCA 1982). See also Judge Schwartz’s dissent in Adoption Hot Line, Inc. v. State, 385 So.2d 682 (Fla. 3d DCA 1980). In view of the foregoing, we have serious doubts that HRS made out a sufficient case for the allowance of a temporary injunction. But there is a more serious procedural defect in the complaint that mandates a reversal.
HRS grounds its authority and standing to sue in this case on Chapters 381 and 63 of the Florida Statutes (1984). Specifically, HRS alleges that its authority to seek an injunction is contained in section 381.-031(3)(b)l(3), which provides:
(3) The department may commence and maintain all proper and necessary actions and proceedings for any or all of the following purposes:
******
(b) 1. To make application for injunction to the proper circuit court, and the judge of that court shall have jurisdiction upon hearing and for cause shown to grant a temporary or permanent injunction or both restraining any person from violating or continuing to violate any of the provisions of this chapter or from failing or refusing to comply with the requirements of this chapter, ...
. ******
(3) In addition to the authority granted by this law, the department, may commence and maintain all proper and necessary actions and proceedings to enjoin and abate nuisances dangerous to the health of persons, fish, and livestock.
Chapter 381 of the Florida Statutes is entitled, “Public Health, General Provisions.” It relates to public health in the context of sanitation and the prevention of communicable diseases among humans and from animals to humans. The fact that the provisions of that chapter are totally inapplicable to this case is best demonstrated by appellant’s reply brief, in which it is stated:
Chapter 381, Florida Statutes, prescribes duties of the department in regard to the traditional forms of public health concerns. Section 381.031 sets out these duties with specificity. For example, the department is authorized to act in respect to communicable diseases (subsections 381.031(l)(b), (c), (d), (e) and (f), sanitary practices related to drinking water and the control of arthropods of public health importance (sub-section 381.031(l)(g)3), control of pigeons or psittacine birds having diseases communicable to man (subsection 381.-031(l)(g)6), and other like dangers resulting from food production and handling, public toilets and washrooms, etc. (subsection 381.031(l)(g)3). It is in this context — involving the department’s authority to control sanitary practices and communicable diseases dangerous to the health of persons, fish and livestock— that the legislature in subsection 381.-031(3)(b)3 also empowered the department to commence proceedings
to enjoin and abate nuisances dangerous to the health of persons, fish and livestock, (emphasis added).
And it is from this context that the department claims authorization to enjoin a search agent for prospective adoptive parents from outside the state.
The complete lack of departmental authority under this section is manifest from the four corners of section 381.031 itself.
Having disposed of the HRS assertion of standing based upon Chapter 381, we turn to its contention that it has authority to enforce the provisions of Chapter 63. To *253 be sure, HRS is given certain licensing authority in said chapter, but nowhere therein is it given the power to bring suits for injunction to enforce the provisions thereof except in section 63.092(9), having to do with intermediaries. That section provides that, if an intermediary violates the provisions of that section, the department may seek an injunction against that intermediary. “Intermediary” is defined in section 63.032(8) as an attorney or physician licensed or authorized to practice in this state or any person, other than a licensed agency, who is qualified by the department to place a child for adoption. It is conceded neither National nor Gitelman is an intermediary.
In addition, Adoption Hot Line, Inc. v. State of Florida, 385 So.2d 682 (Fla. 3d DCA 1980), where the court upheld an injunction sought by HRS against an adoption agency, lends no authority for the proposition that HRS has standing in the present case since the issue of standing was not raised in that case.
The only other provisions for enforcement of Chapter 63 are contained in section 63.212, Florida Statutes (1984), which makes violations of certain provisions of the chapter a felony of the third degree. That section, of course, affords HRS no authority to maintain this suit. However, if HRS perceives that National’s activities violate the provisions of Chapter 63, resort to the State Attorney’s Office would seem appropriate for criminal prosecution.
In view of the foregoing, we hold that HRS had no standing to maintain this suit for injunction and the trial court erred in failing to dismiss the suit and in granting a temporary injunction. Accordingly, the orders appealed from are reversed and the cause is remanded with directions to dismiss the cause.
REVERSED AND REMANDED with directions.
HERSEY, C.J., and DELL, J., concur.