886 So.2d 993 (2004)
MICHELE POMMIER MODELS, INC., d/b/a Wilhelmina Models-Miami and Wilhelmina Int'l., LTD., Appellant,
v.
Michele Pommier DIEL, et al., Appellee.
No. 3D03-3353.
District Court of Appeal of Florida, Third District.
October 13, 2004.
Wolfe Goldstein, P.A., and Mark Goldstein, Hallandale, for appellant.
*994 Akerman Senterfitt, and James M. Miller and Jenna Rinehart Rassif, Miami, for appellee.
Before GREEN, RAMIREZ and SHEPHERD, JJ.
SHEPHERD, J.
This is an appeal from an order dismissing with prejudice a count of a complaint filed by plaintiffs-appellants, Michelle Pommier Models, Inc., d/b/a Wilhelmina Models-Miami, and Wilhelmina International, Ltd. ("Wilhelmina"), seeking preliminary injunctive relief. We have jurisdiction. Fla. R.App. P. 9.130(a)(3)(B).[1] We find no error with the lower court's decision and affirm.
In February 1990, the defendant-appellee, Michele Pommier Diel ("Diel"), sold fifty percent (50%) of her modeling business, Michele Pommier Models Inc., ("the Company"), to one Ana-Gaby Esch. A Shareholders' Agreement and an Employment Agreement were entered into as part of the sale, both of which contained non-compete and non-solicitation covenants.
In June 1999, Esch sold her 50% interest in the Company to Brad Krassner, Robert Kreusler, and Dieter Esch (collectively, "the Krassner Group"). The Krassner Group, which owns Wilhelmina Models, one of the world's largest model management companies, then became entitled to any rights that Esch would have had through the Shareholders' and Employment Agreements.
The Shareholders' Agreement provided a buy/sell mechanism, whereby one shareholder could acquire the shares of the other shareholder after serving notice. The Krassner Group offered to sell their shares of the Company to Diel for $1.5 million. Diel could either accept the offer or alternatively, sell her remaining 50% of the shares to the Krassner Group for the $1.5 million sum. The party who ended up as the seller under the buy-sell provision would then become bound by the non-compete and non-solicitation provisions of the Shareholders' Agreement.
In February 2000, Diel elected to sell her remaining shares in the Company to Wilhelmina for $1.5 million. This automatically commenced the three-year covenant not to compete as contemplated under the Shareholders' Agreement, a period which would expire on February 11, 2003. In addition, by virtue of the Employment Agreement Diel had executed alongside the Shareholders' Agreement, Diel resigned from the Company, triggering the non-compete and non-solicitation provisions of the Employment Agreement as well.
Very shortly thereafter, Diel set up a "consulting" business for modeling hopefuls, offering a photo studio, a recording studio, video facilities, and a full-service boutique, including hair and makeup artists. The new enterprise was located on South Beach, very close to Diel's old Company. Wilhelmina contended that Diel's new consultation business violated the covenants and filed a lawsuit in May 2000. This action went to a Mediated Settlement Agreement in October 2000, whereby the parties defined the scope of Diel's new operation. Basically, Diel agreed to operate a photography studio within certain defined limits, and she also agreed to pay Wilhelmina $52,000. Additionally, the parties agreed to resume their original understanding that Diel would remain bound by *995 the non-compete terms until February 11, 2003.
On February 18, 2003, one week after the non-compete period had expired, Wilhelmina brought an injunction action to extend the non-compete period for another three years, alleging that Diel had continued to violate the non-compete obligations, despite their prior legal skirmish and the Mediated Settlement Agreement. Wilhelmina claimed entitlement to three full years of non-competition, since it was competed against to some degree during the first three. Diel moved to dismiss Count I of the Amended Complaint which sought preliminary injunctive relief, contending that the non-compete obligations expired by their own terms on February 11, 2003. On December 16, 2003, the court entered an order dismissing the count for injunctive relief with prejudice. This appeal follows.
It is well established that Florida case law permits a non-compete period to be equitably extended to allow for what was intended in the bargain. Capelouto v. Orkin Exterminating Co., 183 So.2d 532 (Fla.1966). However, the entirety of the case law in this state on subject deals with fact patterns where the offended party has filed its suit to extend prior to the non-compete period expiring. Id.; Kverne v. Rollins Protective Servs. Co., 515 So.2d 1320 (Fla. 3d DCA 1987); Royal Services, Inc. v. Williams, 334 So.2d 154 (Fla. 3d DCA 1976); Uni-Chem v. Maret, 338 So.2d 885 (Fla. 3d DCA 1976). In this case, Wilhelmina filed one week after the period ran out. If indeed Wilhelmina were so concerned with obstinate conduct by Diel in the face of the Mediated Settlement Agreement, it is perplexing that Wilhelmina did not bring another action from the time of the Mediated Settlement Agreement in October 2000 and February 11, 2003. Having said that, the record suggests that Wilhelmina just recently learned about Diel's alleged violations over the non-compete period.[2]Cf. Pearlstein v. King, 610 So.2d 445 (Fla.1992) (statute of limitations began to run on learning of sponge left inside patient at the time of the second operation to remove sponge). However, even in a recent discovery situation which forces one to file suit after the non-compete period has expired, the procedurally correct way to seek relief would in most, if not all, cases be via the final hearing.
The purpose of a temporary or preliminary injunction is not to resolve *996 disputes, but rather to prevent irreparable harm by maintaining status quo until a final hearing can occur when full relief may be given. Grant v. Robert Half Int'l., Inc., 597 So.2d 801 (Fla. 3d DCA 1992). In this case, the rationale for "maintaining the status quo" has expired by definition since the parties expressly contracted that the status quo would change and competition would resume on February 11, 2003. Therefore, Wilhelmina was not entitled to seek preliminary injunctive relief. However, if deserved, Wilhelmina may still prevail in seeking a permanent injunction, which can still be fashioned by a court when final relief is awarded. See Adoption Hot Line, Inc. v. State Dept. of Health and Rehab. Serv., 385 So.2d 682 (Fla. 3d DCA 1980) (denial of temporary injunction does not decide any material points in controversy and therefore does not preclude granting of permanent injunction at the conclusion of the case).
Affirmed in part as to dismissal of temporary injunctive relief.
Reversed in part as to the premature dismissal of additional injunctive relief that may be warranted based on a full trial on the merits.
NOTES
[1] An order dismissing a count for injunctive relief with prejudice is considered an order denying an injunction and is reversible under Fla. R.App. P. 9.130(a)(3)(B). See Abele v. Sawyer, 750 So.2d 70, 76 n. 1 (Fla. 4th DCA 1999).
[2] Wilhelmina alleges that based on a February 4, 2003 loan-repayment letter it somehow obtained, that Diel had secretly been financing the competitive operations of another former employee of the Company, Paul Palmero. The Amended Complaint alleges that Diel had taken the personnel file of Palmero before she left the Company, and had torn up the non-compete agreement contained therein. Wilhelmina then alleges that following Diel's defeat in the Mediated Settlement, Diel began financing Palmero and the Palmero Agency through another former employee, Alberto Perlman, by funneling money and names of prospective modeling talents, with the hope that when the non-compete period expired, she, Diel, could simply absorb the Palmero Agency and already have a working modeling agency from which to springboard her new operations.

While the existence of this loan repayment letter does suggest recent discovery to explain the one-week filing delay in seeking preliminary injunctive relief, the simple fact is that the parties had contractually agreed that competition would resume after February 11, 2003. Thus, the harm objected to is not exactly "continuing" but something that has already occurred. In that sense, the harm is not "irreparable" so as to justify a preliminary injunction. Any harm that may have occurred to Wilhelmina as a result of Diel's alleged competition during the forbidden period, can still be rectified through money damages or equitable relief following a full hearing on the merits.