J. L. Bronson, W. R. Lanier, as and constituting the trustees of Special Tax School District No. 9, Osceola County, Florida, and individually as taxpayers, *Appellants*, v. The Board of Public Instruction for the County of Osceola, State of Florida, and F. J. Igou, W. R. Godwin, and W. J. Adams, as the members of said Board, and Sam Bramme, as the County Superintendent of Public Instruction of Osceola County, Florida, *Appellees*.

145 So. 833.

En Banc.

Opinion filed January 11, 1933.

2

. G. P. *Garrett* and *Lewis O'Brien,* for Appellants;

. W. J. *Steed,* for Appellees.

DAVIS, C. J.—Section 10 of Article XII of the Constitution of Florida is to the effect that the Legislature may provide for the division of any county or counties into convenient school districts and for the election biennially of three school trustees, who shall have the supervision of all the schools in their respective districts. Section 11 of the same Article provides that any incorporated town or city may constitute a school district. In addition to the foregoing, Section 10 also makes provision for the levying and collection of a district school tax for the exclusive use of public free schools within the district, whenever a majority of the qualified electors thereof, that pay a tax on real or personal property, shall vote in favor of such levy. Section 17 of Article XII provides for and regulates the issuance of

bonds by Special Tax School Districts when provided for by the Legislature.

The statutes provide that each county shall constitute a school unit and that all subdivisions of a county for school purposes shall be designated as school districts. It is further provided that all school districts levying a school district tax under Section 10 of Article XII above mentioned shall be designated as Special Tax School Districts and all schools receiving any district tax as Special Tax Schools. See Section 700 C. G. L., 560 R. G. S.

The Constitution itself having committed to the Legislature the power and duty to "provide for" the division of counties into convenient school districts, including Special Tax School Districts, the Legislature fixed the mode for creating, abolishing and changing the area of Special Tax School Districts by Article VIII, Chapter 1, Title 5, First Division, Compiled General Laws, 1927. By the statutes just referred to, Special Tax School Districts can be created only pursuant to special petition and election, and having been created by such method, they can be abolished and consolidated under the general law in no other way.

Thus it appears that under the present statutes of Florida, Special Tax School Districts, when.created, become a public corporation which may hold property, sue and be sued, and perform other corporate functions (Section 717 C. G. L. 576 R. G. S.), and also exercise supervision of all the public schools within such district. · A Special Tax School District is therefore an administrative unit created by law for the appropriate supervision of all public schools within the district, as well as a special taxing district for school purposes. See Section 709 C. G. L., 568 R. G. S.

Only the levy of the special tax in such district is *constitutionally* required to be authorized by an election. The

division of the County into convenient school districts is a matter which is committed to the Legislature to "provide for" in such manner as it may see fit. But so far the only manner provided by the Legislature is that by petition and election hereinbefore referred to.

The instant case is an appeal from an interlocutory order entered by the Judge of the Osceola County Circuit Court denying an injunction against the Board of Public Instruction of Osceola County sought to restrain them from in effect abolishing Special Tax School District No. 9, of Osceola County by refusing to provide for the maintenance of any public schools therein, and by undertaking to peremptorily require the school children of Special Tax School District No. 9 to attend and be accommodated by the school facilities of Special Tax School District No. 4 located in Kissimmee, the county seat.

The question presented by the ruling appealed from is whether or not the lower court erred in refusing to enjoin the Board of Public Instruction from carrying out the terms of a resolution adopted by the Board, which read as follows:

"RESOLUTION

"WHEREAS, THE BOARD OF PUBLIC INSTRUCTION OF OSCEOLA COUNTY, FLORIDA, heard a delegation of citizens, taxpayers and patrons of the Campbell Station School at its meeting on May 9th, 1932, and again at the meeting on June 13th, 1932, on the question as to whether the Campbell Station three-teacher rural school should be operated for the school year 1932-1933 or whether the children should be transported to and taught in the Kissimmee schools; and then at the meeting of June 27th, 1932, the matter was further discussed and considered by the Board and it was then moved by Mr. Godwin that the children formerly

going to the Campbell Station School be transportd to the Kissimmee schools for the year 1932-1933, which motion prevailed, and

"WHEREAS, at the meeting of this Board on this date, the Board was notified of the institution of a suit by J. L. Bronson, W. R. Lanier, as and constituting the trustees of Special Tax School District No. 9, Osceola County, Florida, and individually as taxpayers to enjoin the abolishment of District No. 9 or the consolidation of Districts Nos. 9 and 4 and to compel the operation of the school at Campbell Station, and

"WHEREAS, the Board has given this matter due and careful consideration and has heard the arguments advanced for and against the temporary suspension of the Campbell Station School and the transportation of the pupils of the Kissimmee schools, and

"WHEREAS, it is the duty of the Board of Public Instruction 'to perform all acts reasonable and necessary for the promotion of the educational interest of the county,' and

"WHEREAS, it has never been the intention of this Board to abolish District No. 9 or the consolidation of District No. 9 and No. 4 nor the expenditure of any funds of District No. 9 except as is authorized by law, and

"WHEREAS, the Board from said investigation has determined that the cost of the operation of the three-teacher Campbell Station School for the term 1931-1932 was $4,744.59, for the three teachers, janitor, two buses and incidentals, accommodating approximately eighty pupils for grammar school education only, and

"WHEREAS, the Board has determined that the only cost that would be incurred for the education of the same children, including those children living in that section of the County desirous of also receiving a high school educa-

tion but are deprived this opportunity, if they were transported to Kissimmee, would be the employment of only one additional teacher in the grammar school and the extra cost of the bus transportation from Campbell Station to Kissimmee, and

"WHEREAS, the Board has determined that the net saving to the Common School Fund of Osceola County, by not operating the Campbell Station School this coming year, but transporting the pupils, will be approximately $3,000.00 a year, thereby reducing the per capita cost of the education of said children as well as the reduction of the per capita cost of the education of the children now attending the Kissimmee schools, and

"WHEREAS, in the judgment of the Board of Public Instruction of Osceola County that the children residing in the said rural district in and around Campbell Station can, because of the better equipment and greater number of teachers and better classification of students in the larger school system in Kissimmee get better instruction in the Kissimmee schools than in the said rural school, and those children who have finished the grammar school and who are desirous of receiving a high school education can receive that education at no additional expense to the taxpayers, it seems' 'reasonable' to the Board that· these children can be transported to the Kissimmee school, and in order to give them this better type of instruction which can be obtained in the Kissimmee schools, it is 'necessary' to transport the children from the rural section in and around Campbell Station to Kissimmee.

"Now, THEREFORE, be it resolved that this Board does adhere to its action of June 27th, 1932, which order that these students be transported to the Kissimmee schools and that no school be operated at Campbell Station for the school year 1932-1933.

"RESOLVED FURTHER, that the attorney for this Board proceed to defend the action instituted by J. L. Bronson, W. R. Lanier, as and constituting the Trustees of Special Tax School District No. 9, Osceola County, Florida, and individually as taxpayers.

"The motion to adopt the resolution was made by Mr. Godwin, seconded by Mr. Igou and carried.

"Vote on motion to adopt: Igou, Yea; Adams, Nay; Godwin, Yea."

Section 561 C. G. L., 454 R. G. S., contains an express provision to the effect that nothing in the law pertaining to the duties and powers of the Board of Public Instruction "shall be so construed" as to prevent any Special Tax School District from holding school property that it has, or might thereafter acquire, for school purposes, or "prevent such Districts from receiving their portions of money set apart for school purposes."

Section 715 C. G. L., 574 R. G. S., imposes the mandatory duty of the County Board of Public Instruction to determine the salaries to be paid teachers and the length of the terms the school shall continue, and to contract with teachers for the full term the fund will maintain after having added the Special Tax School District tax to the amount of "county appropriation made for that school."

It seems perfectly plain, therefore, that when a Special Tax School District has been duly created under the laws of this State and is in legal existence and entitled to act as such, that it is the intention of the law pertaining to school affairs in Florida, that the Board of Public Instruction shall be bound to recognize the legal existence of such Special Tax School District as a lawful administrative unit forming a part of the county school system. The fact that a Special Tax School District also serves the purpose of a

8

special taxing district to make possible the raising by a special tax of additional revenue, is simply incidental to its existence as an administrative corporate unit.

It is also plainly evident from the statutes, that the power conferred upon the County Board of Public Instruction by paragraph 11 of Section 561 G. C. L., *supra*, empowering such Board to "perform all acts reasonable and necessary for the promotion of the educational interests of the County" does not have the effect of permitting such Board to nullify the limitations which have been placed upon the powers of a Board of Public Instruction by paragraph 1 of that same Section, which paragraph 1 preserves to Special Tax School Districts *the right to receive their portions of money set apart for school purposes.* Neither does any portion of Section 561 C. G. L. just referred to, empower the County Board of Public Instruction to accomplish indirectly, what it cannot do directly, by in effect abolishing the functioning of a Special Tax School District through failure to make for the benefit of schools in such Special Tax School District the county appropriation in aid of schools within such District which Section 715 C. G. L., *supra,* contemplates shall be made to be added to the district resources.*

In the present case the Court did enjoin the County Board of Public Instruction from using any of the funds of Special Tax School District No. 9 for the purpose of trans-

*This is in line with the previous holding of this Court to the effect that the acknowledged power of County Commissioners to create and abolish Justice of the Peace Districts does not authorize the Board of County Commissioners to accomplish indirectly what they cannot do directly by so amending the boundary lines of a given Justice of the Peace District that could not be legally abolished, so that its boundary lines would include only an area embracing the court house square. See Conyers v. State ex. rel. Conroy, 98 Fla. 417, 123 Sou. Rep. 817.

porting the children of said District to Special Tax School District No. 4 to attend school. But the Court denied all other injunctive relief and dismissed the bill on the theory that "merely discontinuing the Campbell Station School and transporting the children of Special Tax School District No. 9, Osceola County, Florida, to Special Tax School District No. 4 does not constitute an abolition, consolidation, or change in boundaries of Special Tax School District No. 9, but is a mere matter of expediency in the management and supervision of schools within the discretion of the County Board of Public Instruction of Osceola County, Florida."

This Court does not agree that the proposition is sound, which holds that so long as a Special Tax School District legally exists, that the County Board of Public Instruction has the right, by reason of expediency or otherwise, to ignore the existence of such Special Tax School District, and the schools therein, by discontinuing all the schools in the Special Tax School District, and providing for the transportation of the children of such School District to the schools of an adjoining District. It is our opinion that viewing the statutes at large, and the system of school management as it was intended to operate under the Constitution and statutes, that the power of the Board of Public Instruction to consolidate schools in the interest of greater educational efficiency, does not extend further than the power to consolidate individual district schools within a Special Tax School District, so long as such District remains in legal existence. The power to consolidate individual schools which the Board of Public Instruction undoubtedly has under the statutes, is not so broad as to include any authority to consolidate all the existing schools of one District with a school located in an entirely separate and distinct District. Such a consolidation of schools,

while denominated otherwise, is in legal and practical effect a consolidation of Districts which can only be accomplished as the statutes provide and as the Legislature has authorized.

While we entertain the construction of the statutes that we have heretofore expressed, we are not disposed to disturb the ruling of the Chancellor denying the injunction in the particulars wherein injunctive relief was denied. To reverse the decree now and order that an injunction issue would probably result in confusion and disorder in the management of the school system for the present year. This Court is committed to the doctrine that extraordinary relief will not be granted in cases where it plainly appears that although the complaining party may be ordinarily entitled to it, that the granting of such relief in the particular case would result in confusion and disorder and will produce an injury to the public which outweighs the individual right of the complainant to have the relief he seeks. Gwynn v. Hardee, 92 Fla. 543, 110 Sou. Rep. 343; State ex rel. Gillespie v. Thursby, 104 Fla. 103, 139 Sou. Rep. 372.

We therefore affirm the order appealed from but without prejudice of the right of complainants, as Trustees of Special Tax School District No. 9, Osceola County, to seek appropriate relief by mandamus, or otherwise, to require the Board of Public Instruction of said County to hereafter comply with its duty to provide for the maintenance of one or more schools in said Special Tax School District No. 9 in order to preserve the existence and function of said District as an administrative unit of the county school system so long as said Special Taxing School District No. 9 shall continue legally to exist.

Affirmed without prejudice to right of appellants to seek

appropriate relief. The costs of this appeal shall be taxed against appellees.

WHITFIELD, TERRELL, BROWN and BUFORD, J. J., concur.

ELLIS, J., absent on account of sickness.