S. B. Reaves, J. A. Bronson and C. C. Bronson, individually, and as taxpayers of Special Tax School District No. 9 Orange County, and as constituting the Trustees of Special Tax School District No. 9, Orange County, known as the Beulah-Vineland District, and said Special Tax School District No. 9, Orange County, in its corporate capacity, v. Julian E. Sadler, J. R. Holbrook and Ira Johnston, as and constituting the Board of Public Instruction of Orange County, and said Board of Public Instruction of Orange County, Florida, in its corporate capacity, *et al.*

189 So. 41.

Opinion Filed January 27, 1939.

On Rehearing May 30, 1939.

554

*George P. Garrett* and *Lester Harris,* for Appellants;
G. B. *Fishback* and *Joe Scott Kirton,* for Appellees.

CHAPMAN, J.,—This case is here on appeal from a final decree entered by the Circuit Court of Orange County, Florida. It has been made to appear by the record that the Board of Public Instruction of Orange County, on September 2, 1938, adopted a resolution to the effect that children located in Beulah-Vineland District No. 9, whose parents desired, could matriculate with Oakland-Winter Garden District No. 7, and the bus drivers were directed to pick up and transport such pupils from Beulah District No. 9 to Winter Garden District No. 7 and return. The effect of the resolution so adopted was to deprive the Beulah School of the services of one teacher and to the detriment of the Beulah District.

It was further shown that a school in Orange County having an average daily attendance of thirty students for the previous school year was, as a matter of law, entitled to one teacher, and where there exists an average daily attendance of forty students, as a matter of law, the school is entitled to two teachers, and where there are more than forty students an additional teacher is allowed for the major fraction of every additional thirty-five students. We therefore conclude that where a school in Orange County has an enrollment of thirty pupils it is entitled to one teacher; if forty pupils, two teachers; if fifty-eight to seventy-five pupils, three teachers,—when their salaries would be paid largely by the State and not by the Beulah District, thereby affecting the amount of money to be raised by taxation on the property in the school district.

On October 6, 1938, the lower court entered an order sustaining a motion to dismiss the suit as against the Trustees of the Winter Garden District No. 7, but con-

tinued the case and heard evidence on the issue between the plaintiffs and the Board of Public Instruction, and on final hearing denied an injunction for the present school term on the theory that to issue it after the two school terms had opened would not only create confusion, but would create great inconvenience in the operation of the school system of Orange County, but enjoined the school board in the management of its school buses in the receipt for transportation of pupils of Beulah District to be transported therefrom to the Winter Garden District in numbers so as not to reduce Beulah school to under forty pupils; and such restraining order should become effective after the expiration of the present school year.

It is contended here that before the pupils can be legally transported from the Beulah District to the Winter Garden District the joint consent or approval must first be obtained of (a) the trustees of the Beulah District; (b) the trustees of the Winter Garden District; (c) the Board of Public Instruction of Orange County. The cases of Bronson and Lanier, Trustees, v. Board of Public Instruction, 108 Fla. 1, 145 So. 833, and Malounek v. Highfill, 100 Fla. 1428, 131 So. 313, are cited. We have carefully examined these authorities.

Section 718 C. G. L., provides:

"Children residing outside of any special tax school district shall not attend school in any such district without the consent of the trustees thereof, and of the county board of public instruction; Provided, that nothing in this law shall be so construed as to prevent attendance from an adjoining county provided the county school board of such adjoining county shall pay a pro rata share of such attendance. Such pro rata share to be estimated by the trustees of such school where such attendance is made: Provided, further, that pupils from other districts or subdistricts shall be subject to

same conditions as pupils from other counties as herein provided for."

If the pupils residing in the Beulah District desire to attend school in the Winter Garden District under the above provisions, they are required to first obtain the consent of the trustees of the Winter Garden District and then the consent of the Board of Public Instruction of Orange County. The Section *supra* requires the pro rata share of the costs of the attendance of said pupils, as estimated, to be paid.

The school system of Florida is supported by taxation for the purpose of promoting the general intelligence of the people constituting the body politic and thereby increasing the learning, efficiency, and usefulness of our citizens. The Constitution contemplates a uniform system of schools, which are classified by statutes. The attendance by school children of Florida is not only expected, but made compulsory by statute. This uniform system of public free schools is administered by officers duly elected by the people as provided for by law. There is no greater responsibility than the education of the boys and girls of Florida. The responsibility should be exercised at all times so as to promote or advance our present school system to the ultimate benefit and advantage of the youth of Florida. The authority granted the School Board of Orange County, Florida, under Section 718 C. G. L. to approve or disapprove the attendance and transportation of pupils of the Beulah District to the Winter Garden District should not only be cautiously and carefully exercised, but should be done with an eye singular to the promotion and advancement of the school system and the best interest and welfare of the children of Orange County. It is their duty to exercise or apply the best business judgment and principles in the expenditure of school money raised by taxation.

. It is insisted that the restraining order issued by the lower court should become effective instanter, rather than at the expiration of the present school year. It is clear that this ruling involves the sound discretion of the lower court.

The lower court considered fully the general welfare of the school system of Orange County and the pupils of Beulah and Winter Garden Districts, not only at the time of the issuance of the injunction but the effective date thereof. It has not been made to appear on this record that the Chancellor acted arbitrarily in the ruling assigned as error, but many substantial reasons exist to support the order appealed from.

In an unbroken line of decisions this Court has held that the issuance of a temporary injunction rests in the sound judicial discretion of the trial court, guided by established rules and principles of equity jurisprudence arising from the facts of the particular case. Likewise, the facts and the law of the particular case guide the court as to the decree that should be entered on final hearing. The conclusion of the Chancellor on questions of fact as expressed in a final decree will not be disturbed on appeal to this Court unless an abuse of discretion has been clearly made to appear. See Farrington v. Harrison, 95 Fla. 769, 116 So. 497; Atlantic Bank, etc., Co. v. Sengstak, 95 Fla. 606, 116 So. 267; Mock v. Thompson, 58 Fla. 477, 50 So. 673; Lucas v. Wade, 43 Fla. 419, 31 So. 231; Kent v. Knowles, 101 Fla. 1375, 133 So. 315, 317.

We fail to find error in the record. The decree appealed from is hereby affirmed.

WHITFIELD, P. J., and BROWN, J., concur.

BUFORD, J., concurs in the opinion and judgment.

TERRELL, C. J., and THOMAS, J., not participating, as authorized by Section 4687, Compiled General Laws of 1927 and Rule 21-A of the Rules of this Court.

## On Petition for Rehearing

Per Curiam.—This is a controversy between Special Tax School District Number Nine and the Board of Public Instruction and Special Tax School District Number Seven all of Orange County. It appears that Special Tax School District Number Nine has an enrollment of approximately eighty pupils, about fifty of whom are by the Board of Public Instruction and with the consent of Special Tax School District Number Seven, being transported from their homes in the former district to a public school in the latter district.

Special Tax School District Number Nine filed its bill of complaint seeking to enjoin the transportation of said pupils to said Special Tax School District Number Seven. On final hearing on bill and answer, the Chancellor entered his decree dated October 14, 1938, enjoining such transportation below forty pupils but made his decree effective after the "present school year" which comes to an end June 30, 1939. We affirmed this judgment on appeal.

On rehearing, it is insisted that the judgment of affirmance was erroneous and seven reasons are pressed why it should be reversed. They all turn on the power of the Board of Public Instruction to permit the pupils of one Special Tax School District to attend a public school in another Special Tax School District in the same county.

The Constitution provides for the creation of Special Tax School Districts. The Statute provides the manner of creation, the abolition, and the change of boundaries of Special Tax School Districts. When a Special Tax School District is created, the necessary inference is that all pupils within said district are required to attend the school or schools located therein. There is no power vested in a Board of Public Instruction to authorize their attendance or transportation to any other school or district except for

reasons of convenience as contemplated by the latter part of Section 718, Compiled General Laws of 1927. "Convenience" as employed in this Act has reference to physical barriers and geographical conditions and is a matter of compact between the districts affected and the Board of Public Instruction. It is not controlled by caprice or preference.

When a Special Tax School District is created it becomes the duty of the people resident therein, including the Board of Public Instruction, to maintain the integrity of the district and to support its school or schools by attending the one nearest them. It is begging the question to contend that the Board of Public Instruction has the power to cart off to some other district over half the pupils of one district for no other reason than that they prefer the other school. If this can be done, there is no such thing as preserving the integrity of a Special Tax School District. This is not to be construed as holding that pupils of high school grade cannot be transported to a central high school when circumstances justify.

It follows that in so far as the final decree was made effective after the "present school year," it is reaffirmed on rehearing because the "present school year" is expiring and to that extent, the question is moot. In other respects, the final decree is affirmed but with directions that it be modified to conform with the view expressed in this opinion.

Affirmed with directions.

TERRELL, C. J., and WHITFIELD, BROWN, BUFORD and CHAPMAN, J. J., concur.

JUSTICE THOMAS not participating as authorized by Section 4687 Compiled General Laws of 1927 and Rule 21-A of the Rules of this Court.