418 So.2d 370 (1982)
FLORIDA LAND COMPANY, a Florida Corporation, Appellant,
v.
ORANGE COUNTY, a Political Subdivision of the State of Florida, Appellee.
No. 81-1090.
District Court of Appeal of Florida, Fifth District.
August 18, 1982.
*371 Ernest R. Drosdick and Timothy J. Manor of Lowndes, Drosdick, Doster & Kantor, P.A., Orlando, for appellant.
Philip H. Trees of Gray, Harris & Robinson, P.A., Orlando, for appellee.
FRANK D. UPCHURCH, Jr., Judge.
Appellant appeals from an order denying its motion for a temporary injunction to enjoin operation of Orange County's Ordinance 81-14. The motion for temporary injunction is part of a suit which was brought by appellant challenging the constitutionality of the ordinance.
Appellant owns 4,200 acres of land in Orange County which it began to develop in 1973. Appellant contends that by an agreement entered into in 1973 between itself and the County, the County guaranteed to appellant adequate sewage plant capacity at the Sand Lake Road treatment facility to supply its needs.
In December, 1980, however, the County, in response to a suit by the federal government, entered into a consent decree which permitted the County to increase the available sewage treatment capacity at the Sand Lake plant from 7.5 million to 14 million gallons per day. The County then adopted Ordinance 81-14 to allocate this additional 6.5 million gallons per day of additional sewage capacity to potential customers.[1]
Appellant contends that between 1980 and 1990 it would need approximately 300,000 to 400,000 gallons per day of additional sewage capacity each year but that under *372 the ordinance it would only be entitled to 100,000 gallons per day of additional capacity (see footnote 1). Appellant sued, alleging, inter alia, that the ordinance unconstitutionally impairs its contract rights and deprives it of a vested property right without due process of law.
The narrow question on this appeal is whether the trial court abused its discretion in denying appellant's motion for a temporary injunction to enjoin operation of the ordinance pending trial. See Playpen South, Inc. v. City of Oakland Park, 396 So.2d 830 (Fla. 4th DCA 1981); Sadowski v. Shevin, 351 So.2d 44 (Fla. 3d DCA 1976), rev'd on other grounds, 345 So.2d 330 (Fla. 1977).
A temporary injunction is an extraordinary and drastic remedy whose purpose is to preserve the status quo pending final hearing. Adoption Hot Line, Inc. v. State, 385 So.2d 682 (Fla. 3d DCA 1980). Appellant, as the party moving for a temporary injunction, was required to establish in this case that:
1) it would suffer irreparable harm unless the status quo is maintained;
2) it has no adequate remedy at law;
3) it has a clear legal right to the relief requested; and
4) considerations of the public interest.[2]
Wilson v. Sandstrom, 317 So.2d 732 (Fla. 1975). Playpen South, Inc. v. City of Oakland Park; Contemporary Interiors, Inc. v. Four Marks, Inc., 384 So.2d 734 (Fla. 4th DCA 1980).
Without reaching any of the other factors, we conclude that appellant has failed to establish that issuance of the temporary injunction will serve the public interest. See Playpen South. Indeed, the record indicates exactly the opposite.
In Sadowski v. Shevin, the Third District Court of Appeal remarked that:
A trial court may properly refuse to grant an injunction when it appears that greater injury and inconvenience would be caused to the defendant by granting the injunction than denying it, or where the granting of an injunction will result in confusion, disorder and injury to the public outweighing any individual right to relief the complainant may have.
351 So.2d at 44.
In Fredericks v. Blake, 382 So.2d 368 (Fla. 3d DCA 1980), the Third District Court of Appeal reiterated that an injunction will not be granted where it is readily apparent that it will result in confusion and disorder and produce an injury to the public that outweighs the individual right of the complainant to have the relief sought. See also Bronson v. Board of Public Instruction, 108 Fla. 1, 145 So. 833 (1933).
The evidence presented below indicates that a temporary injunction directed to the ordinance would have a severe impact on the citizens of Orange County. The director of the County's Utility Division testified that fees in excess of $1 million dollars had been collected under the ordinance and were being used to increase the amount of sewage treatment capacity available at the Sand Lake Road plant. The director further testified that if the ordinance's operation was enjoined it:
[W]ould create very, very substantial problems for the County and for the Department and ultimately, for the land developers in the area served by the Sand Lake Road treatment plant... . It would frustrate very substantially the job that we're trying to accomplish and that is to provide service for the existing and future needs of the County. I think it would be very chaotic under those circumstances.
Clearly in view of this uncontradicted evidence, the trial judge was justified in *373 refusing to temporarily enjoin operation of the ordinance.
AFFIRMED.
SHARP and COWART, JJ., concur.
NOTES
[1] Under the ordinance, applicants for additional capacity are divided into three categories, Types "A", "B" and "C."

Type "A" applicants include those who either: (1) have a permit issued by the State Department of Environmental Regulation (DER) which authorizes connection to the Sand Lake plant without requiring additional permits; (2) have been mandatorily required by the County to connect to the plant; or (3) possess a valid and correct building permit issued before adoption of the ordinance but who have not as of yet connected to the plant.
Type "B" applicants include those who are otherwise eligible for a Type "A" permit but who failed to acquire such permit because of insufficient capacity and holders of permits issued by the DER which do not authorize connection to the plant in the absence of additional DER permits.
Type "C" applicants are those who have a current contract with the County for sewage capacity at the plant. This category includes appellant.
The additional capacity is allocated first among Types "A" and "C" applicants, with each Type "A" applicant entitled to up to 500,000 gallons a day and each Type "C" applicant entitled to 100,000 gallons per day. The remaining portion of the additional capacity is allocated among Type "B" applicants, though some of this additional capacity may be available to Type "C" applicants if it is not used by Type "B" permittees.
[2] This fourth element has been expressly recognized by the Florida Supreme Court on numerous occasions where the public interest would be affected by the granting or denial of a temporary injunction. See, e.g., Wilson v. Sandstrom, 317 So.2d 732 (Fla. 1975); Bronson v. Board of Public Instruction, 108 Fla. 1, 145 So. 833 (1933); Florida East Coast Railway Co. v. Taylor, 56 Fla. 788, 47 So. 345 (1908).