555 So.2d 963 (1990)
William M. HALL, Appellant,
v.
CITY OF ORLANDO, etc., Appellee.
No. 89-1973.
District Court of Appeal of Florida, Fifth District.
January 25, 1990.
Robert W. Anthony and Ladd H. Fassett of Warlick, Fassett, Divine & Anthony, P.A., Orlando, for appellant.
Jean A. Roush-Burnett, Chief Asst. City Atty., Orlando, for appellee.
DANIEL, Chief Judge.
William Hall appeals an order denying his request for a temporary injunction to prevent the City of Orlando from expanding the use of a drainage easement on his property and flooding the surrounding area. Hall argues that he satisfied the requirements for a temporary injunction and was entitled to such relief. We agree and accordingly reverse and remand with directions to issue an injunction enjoining the City from draining water through the easement in excess of the amount originally contemplated by the easement.
A temporary injunction is a extraordinary and drastic remedy whose purpose is to preserve the status quo pending final hearing. Florida Land Company v. Orange County, 418 So.2d 370 (Fla. 5th DCA 1982). The party moving for a temporary injunction must show that 1) he will suffer irreparable harm unless the status quo is maintained; 2) he has no adequate remedy at law; and 3) he has a clear legal right to the relief requested.[1]Langford v. Rotech Oxygen and Medical Equipment, Inc., 541 So.2d 1267 (Fla. 5th DCA 1989); Florida Land Company; Russell v. Florida Ranch Lands, Inc., 414 So.2d 1178 (Fla. 5th DCA 1982). The courts have also noted that a trial judge may deny injunctive relief when the granting of an injunction would result in confusion, disorder and injury to the public which outweighs any individual right to relief that the complainants may have. See Florida Land Company, 418 So.2d at 372.
In his suit for injunctive relief, Hall alleged that he owns property which borders on Kirkman Road in Orlando, that the City is in the process of constructing additions to Kirkman Road and the surrounding *964 area which include widening Kirkman Road, adding various turn lanes for use in getting to property owned by Universal Studios, and installing drainage systems. Hall further alleged that the construction and additions by the City include the installation of 54-inch drain pipes from Kirkman Road along the boundary of his property leading to a ten-foot drainage easement on his property. Hall alleged that the effect of the City's actions will be to flood his property, increase the flood elevation level, and expand the use and widen the easement.
At the hearing, Hall called two engineers, Hugh Harling and Bernard Golding, and his real estate broker, Sue Keesling, to testify on his behalf. Harling testified that Hall's property, approximately fifteen acres known as "Unit 15" of Florida Center, has a ten-foot wide easement dedicated to the public for drainage of the adjacent areas. According to Harling, the City will be paving over swales in order to widen Kirkman Road and add turn lanes for Universal Studios and will be installing 54-inch pipes at the entrance of Universal Studios to accommodate the runoff which will eventually drain through the easement on Hall's property. Harling testified that this plan will double the impact on the easement, resulting in increased concentration of water and increased flood elevation. Harling stated that the easement is not wide enough to hold the capacity from a 54-inch drainage pipe and discharge from the pipe will expand beyond the width of the easement and will cause it to double in size. Using figures supplied by the City, Harling estimated that an additional 24,000 square feet of Hall's property will be in the 100-year flood elevation because of the City's actions. Harling also testified that he had proposed a plan to the City to eliminate the problem. The plan, which Harling estimated would cost about $100,000, consisted of the installation of additional piping and the construction of a beam to control the runoff. The City refused to accept this plan. According to Harling, the additional pipes and berm should be constructed as soon as possible to prevent erosion.
Bernard Golding testified that he did the master storm water management plan for Florida Center in the 1970's. Golding stated that the original intent of the easement was only to provide drainage for two catch basins on the property. According to Golding, a ten-foot easement for a 54-inch pipe is inadequate and a 50-foot easement would be needed. Golding was of the opinion that the accelerated water flow from the City's planned construction was "simply going to rip the thing right up from one end to the other" and that the obvious result of the City's plans would be to trespass beyond the ten-foot boundary line of the easement.
Sue Keesling, a real estate broker and property manager for Hall, testified that the status of the easement has not changed since 1978. Ms. Keesling also testified that there was a contract to purchase three acres of Hall's property for over $1,000,000. In Ms. Keesling's opinion, the City's planned drainage system will severely impact on the marketability of the property.
Richard Levey, the Director of Planning and Development for the City, testified that the exact impact of future development was not foreseeable at the time the easement was dedicated to the public. Levey stated that Kirkman Road, which borders Hall's property, was in a below standard condition, that its condition will worsen if it is not widened, and that the City could not make the roadway improvements unless it is permitted to install drainage improvements. Levey further testified that if the City is prohibited from making the roadway improvements, the City would not be able to issue certificates of occupancy for about one-half billion dollars worth of capital improvements in the area.
The City also called James Hunt, an engineer, who testified that the City's development and roadway improvements would increase the average water volume by 2.5 percent. Hunt further testified that Universal Studios was at a higher elevation than Hall's property because Universal Studios had filled in its property, that the surrounding areas already had drainage problems, and that the City could not complete *965 the roadway improvements if the present plan is not used. On cross examination, Hunt admitted that the intent of the easement was to serve the drainage at the time it was dedicated to the public. Hunt also admitted that a ten-foot easement was not adequate to handle the water which will be discharged from a 54-inch pipe.
As the time for the hearing was running out, counsel for the City summarized the testimony of its other witnesses. According to counsel, a property appraiser was prepared to testify concerning the value of Hall's property before and after construction to quantify any "taking" or damages.
The trial court concluded that there were some interesting issues being presented such as whether the City's planning and development over-burdened the easement and whether there should be some compensation for it. However, for the purposes of a temporary injunction, the court found that Hall failed to present sufficient evidence of immediate danger and that money damages could be used to compensate any injury. Accordingly, the court denied Hall's request for a temporary injunction.
We disagree and find that review of the record compels the conclusion that, if not enjoined, it is sufficiently probable that the City's drainage system will result in a multiplicity of suits and injury to Hall of a nature that cannot be compensated by money damages. Thus, a temporary injunction should be issued. See Deltona Corporation v. Adamczyk, 492 So.2d 463 (Fla. 5th DCA 1986).
In Deltona, the owner of a portion of a lake filed suit against Deltona Corporation, a co-owner of the lake, seeking injunctive relief and monetary damages. The owner alleged that Deltona had pumped water into the lake, thus causing it to flood, destroy trees, and cause other damage. The trial court awarded the owner damages but denied injunctive relief. On appeal, this court affirmed the award of damages but reversed the denial of injunctive relief:
The evidence supports the award of money damages. However, we also find the facts compel the conclusion that, if not enjoined, it is sufficiently probable that appellant's continued drainage and pumping of water into Evans Lake will result in a multiplicity of suits and further injury to appellee of a nature that cannot be adequately compensated by money damages and that a permanent injunction should be issued. Appellant is entitled to make reasonable use of its ownership interest in Evans Lake; therefore, an injunction against all drainage and pumping would be unreasonable. However, any use of Evans Lake by appellant that causes damages or injury to appellee in her ownership interest in Evans Lake is unreasonable and should be enjoined.
We affirm the award of money damages for past injury but remand with directions that appellant be permanently enjoined from draining or pumping water into, or out of, Evans Lake or from otherwise interfering with the natural quantity and quality of water in Evans Lake to any extent or degree that causes damage to appellee's lands or otherwise injures appellee. If appellant must choose between draining or pumping water into Evans Lake to protect or benefit other lands, or not draining or pumping water into Evans Lake to prevent damage or injury to appellee, it must make any such decision at its own peril. The risk of the consequences of appellant's actions should be on appellant. If appellant does not desire to assume that risk it can be avoided merely by refraining from interfering with the natural level and condition of Evans Lake.
492 So.2d at 463-464.
In State of Florida, Department of Environmental Regulation v. McCormick, 464 So.2d 632 (Fla. 5th DCA 1985), this court also reversed the denial of a request for a temporary injunction. In that case, the Department of Environmental Regulation sought a preliminary injunction against the McCormicks, alleging that they were conducting dredging and filling activities *966 on their property without a permit and that they were dumping solid waste in and around a body of water in violation of DER regulations. The trial court denied injunctive relief. On appeal, this court concluded that the trial judge had erroneously interpreted the administrative rules relating to this activity, reversed the court's ruling, and remanded for issuance of a preliminary injunction in accordance with DER's request.
In the present case, Hall satisfied the requirements for a temporary injunction. There is no dispute that the drainage from the City's roadway and construction plans will overflow the easement. Thus the City's action will invade Hall's property rights and interfere with his use and enjoyment of the property. Hall's broker also testified that the marketability of the property would be severely impacted by the flooding. In Zimmerman v. D.C.A. at Welleby, Inc., 505 So.2d 1371 (Fla. 4th DCA 1987), the court upheld a temporary injunction as to certain activities of picketers demonstrating outside a condominium sales office. The court concluded that the remedy at law for the harm done to the condominium owner, the loss of potential sales, was inadequate because of the difficulty in determining how many sales were lost and what the profit on each such lost sale would have been. Since the damages were speculative and unascertainable, the court concluded that the harm was irreparable and the remedy at law inadequate. Likewise, here the harm to Hall is irreparable and the remedy at law inadequate.
Hall also appears likely to succeed on the merits. The holder of an easement has essentially the right of free passage over the easement to the degree and amount originally contemplated by the parties. Tortoise Island Communities, Inc. v. Roberts, 394 So.2d 568 (Fla. 5th DCA 1981). "Every easement carries with it by implication the right, sometimes called a secondary easement, of doing what is reasonably necessary for the full enjoyment of the easement itself ... [but] the right is limited and must be exercised in such reasonable manner as not injuriously to increase the burden upon the servient tenement ..." Crutchfield v. F.A. Sebring Realty Company, 69 So.2d 328, 330 (Fla. 1954). In Crutchfield, the Florida Supreme Court upheld an order which permanently enjoined the defendant from pumping water from a lake situated on the plaintiff's property. The court held that permission given to the defendant's predecessors in title to take limited amounts of water from the lake did not authorize the defendants to operate a large scale irrigation operation on the plaintiff's land to the detriment of the plaintiff. Similarly here, it appears that the City's construction and drainage improvements have gone beyond the scope of the easement when it was dedicated to the public.
Finally, the public interest does not prevent the issuance of an injunction here. In Florida Land Company, a developer appealed the denial of its motion for a temporary injunction to enjoin the operation of Orange County's sewage ordinance. In view of the uncontradicted evidence presented below which indicated that a temporary injunction directed to the ordinance would have a severe impact on the citizens of Orange County, this court held that the trial judge was justified in refusing to temporarily enjoin operation of the ordinance. Here, there was some testimony that the injunction would interfere with the City's roadway construction plan. However, the City could have avoided any interference with its plans by lawfully acquiring the property needed to service the easement. In Department of Transportation v. Burnette, 384 So.2d 916 (Fla. 1st DCA 1980), the district court upheld an injunction against the Department of Transportation enjoining the Department's use of a drainage system which burdened the land of Burnette. In so doing, the court noted that "[c]ondemnation of some land or easements may be appropriate to manage this drainage in compliance with the injunction, but the manner and method of so relieving Burnette's land is for the *967 Department to determine in the exercise of its lawful powers." 384 So.2d at 323.
REVERSED AND REMANDED.
COBB and COWART, JJ., concur.
NOTES
[1] "Clear legal right" means that the plaintiff shows a substantial likelihood of success on the merits. Langford, 541 So.2d at 1268, n. 2.