COBB, Judge,
dissenting.
The issue posed by this appeal is whether the trial court erred in refusing to dissolve a temporary injunction entered against the appellants, the parents of a minor child. They were enjoined from communicating with the press or other third parties regarding the facts and findings of an arbitration proceeding administered by the Christian Conciliation Service of Central Florida, Inc. (CCS).
In 1983, the parents alleged that a Catholic priest had fondled or molested their minor daughter. The parties agreed to resolve the matter through the mediation/arbitration forum offered by CCS. The rules of that organization define “Christian Conciliation” as “the voluntary submission of a legal dispute to Christians for mediation or arbitration.” Arbitration awards are legally binding and can be filed and enforced as court judgments in the State of Florida.
Rule 11 of the CCS rules, entitled “Confidentiality,” states:
All statements made during the conciliation process will be of a confidential nature and will not be made known to persons not involved in the process. When deemed appropriate by CCS and/or the conciliators, the case may be fully discussed with the appropriate church authorities of parties professing to be Christians, and those authorities may be requested to become involved in accordance with Matthew 18 and other scriptural principles.
Neither the statements made during the conciliation process nor the testimony of any conciliator will be admissible for any purpose, including impeachment, in a court of law, except for the defense or enforcement of an arbitration decision.
The parties entered into a mediation/arbitration agreement which drew a distinction, contrary to the rules, between the arbitration process and the “conciliation process.” Under the rules, of course, the conciliation process encompasses arbitration as well as mediation. The confusion occasioned by the language of this agreement, however, should not affect our determination of the instant appeal. I view the agreement between the parties as a botched attempt to reflect the wording of the rules.[1]
Following an unsuccessful mediation, the parties submitted to binding arbitration. Thereafter, on August 25, 1986, the CCS arbitrators reached a final decision with *1089 various findings of fact and conclusions of law. Generally, it was held that the priest had touched the daughter in an inappropriate manner on several occasions and that the Church was negligent in retaining and supervising him. Additionally, the arbitration panel found against the priest and the Church, jointly and severally, in the amount of $250,000.00. This amount was subsequently paid by the local Diocese to the parents within thirty days of the arbitration decision.
On April 18, 1988, counsel for the parents informed church counsel that they considered any confidentiality agreement to be null and void, and that they would maintain confidentiality only upon condition that they could meet with parish counsel in the priest’s new assignment and with the Bishop of that area to discuss the underlying facts and findings of the arbitration panel as well as the possibility of a public apology.
On May 12, 1988, the priest filed an amended petition for a temporary and permanent injunction. He alleged that confidentiality was an aspect of the CCS process and was agreed to by all the parties, and that an arbitration award had been paid in full to the parents. Additionally, he claimed that the parents breached the confidentiality agreement by speaking to a reporter from a news service and that, through counsel, the parents had made it clear that they did not feel bound by the agreement. The priest further contended that any public forum would harm his reputation and make it impossible to carry on his priestly duties, thereby causing him irreparable injury for which there was no adequate remedy at law. Subsequently, the trial court entered a temporary injunction purporting to protect the priest from sustaining irreparable harm prior to the issue of confidentiality being heard on the merits. Upon the declination by the trial court to dissolve this temporary injunction, the parents filed the instant appeal.
A temporary injunction is an extraordinary remedy designed to preserve the status quo pending final hearing. Florida Land Co. v. Orange County, 418 So.2d 370 (Fla. 5th DCA 1982). The movant must show that (1) he will suffer irreparable harm unless the status quo is maintained; (2) he has no adequate remedy at law; and (3) he has a clear legal right to the relief requested. Langford v. Rotech Oxygen and Medical Equipment, Inc., 541 So.2d 1267 (Fla. 5th DCA 1989); Florida Land Co.; Russell v. Florida Ranch Lands, Inc., 414 So.2d 1178 (Fla. 5th DCA 1982).
I can agree with the trial judge that the priest may have established the threat of irreparable injury for which there would be no adequate remedy at law based upon the documents and evidence submitted below. It is the third requirement that causes the difficulty: can the priest have a clear legal right to “confidentiality” — i.e., suppression of the facts — surrounding the criminality involved in child molestation? I think not. The requirement of confidentiality herein at issue is void as a matter of public policy. Section 415.504, Florida Statutes (1989) provides that “any person ... who knows, or has reasonable cause to suspect, that a child is ... abused ... shall report such knowledge or suspicion to the (Department of Health and Rehabilitative Services).... ” Moreover, a person who takes money on an agreement to conceal a felony is guilty of a third degree felony. See § 843.14, Fla. Stat. (1989).
I believe it was error to grant the temporary injunction to the priest, and it should have been dissolved. It would seem to follow that the payment of the $250,000.00 award pursuant to a void arbitration proceeding predicated upon confidentiality cannot stand, unless it could be shown that such payment was the product of a settlement agreement between the parties that was not dependent upon the element of confidentiality, an issue not before us at this time. The order denying the motion to dissolve the temporary injunction should be reversed.

. In point of linguistic fact, the agreement of the parties does not purport to dispense with the confidentiality of the arbitration proceedings in regard to subsequent communications outside of court, as erroneously contended by the appellants.