567 So.2d 901 (1990)
Thomas J. FRY and Joanne Q. Fry, His Wife, Appellants,
v.
J.E. JONES CONSTRUCTION COMPANY, Etc., Appellee.
No. 89-2401.
District Court of Appeal of Florida, Fifth District.
August 23, 1990.
William N. Asma of Asma & Wright, Winter Garden, for appellants.
Kenneth R. Marchman of Hunter, Patillo, Marchman, Sanders & Bethea, P.A., Winter Park, for appellee.
PETERSON, Judge.
Thomas and Joanne Fry appeal a judgment denying their request for rescission of a contract to purchase a parcel of real estate and denying their claim for an equitable lien upon the parcel for the amount of their deposit. We reverse the judgment.
On October 21, 1987, the Frys entered into an agreement with, and paid a deposit of $10,292 to, J.E. Jones Construction Company doing business as the Jones Company for sale and purchase of the parcel. The *902 parcel is described as lot 7, phase I, of the subdivision known as The Manors at Butler Bay, according to the plat thereof recorded in plat book 19 at pages 90 and 91 of the public records of Orange County, Florida.
Prior to entering the contract, the Frys had heard from a friend that lakefront lots were available in the subdivision. The Frys visited The Manors, and Mr. Fry observed a large, glassed display of the subdivision in the sales office. Observing that eight or nine lots appeared to be on Lake Crescent, Mr. Fry asked Sandra Scott, the sales agent for the Jones Company, whether any of the lots bordering the lake were lakefront lots. Mr. Fry explained to Scott that he and his wife wanted a home on a lake because they were both avid water skiers. Testimony at trial indicated Sandra Scott replied that, indeed, there were lakefront lots, but they supported a $20,000 premium over other lots in the subdivision. Brochures of home models were supplied to the now seriously interested Frys, as well as a site plan of the subdivision, a copy of which is shown in appendix "A" to this opinion.
The site plan was essentially the same as the glassed display first seen in the sales office. Mr. Fry observed that lines drawn on the site plan separated the lakefront lots from the water, and he asked Scott about them. According to Mr. Fry, Scott replied that the lines demarcated the area in which the seller would install sod. Scott further assured him that ownership of their chosen lot 7 would extend to the lake's edge, but landscaping by the owners to the water's edge was not permissible because it would pollute the lake. Satisfied with the explanation, the Frys signed the contract for purchase of the lot and construction of a home for a purchase price of $199,484.
The Frys later discovered they would not own the land to the water's edge. The subdivision plat indicates lot 7 ends some 100 feet from the water's edge and that the area between the lot and the lake is a conservation tract. It also appeared that the Frys would not be able to secure a boat dock permit. They expressed their concerns orally to the seller and in a letter formalized a demand for refund of their deposit. The basis for their demand was that Scott had informed them incorrectly that lot 7 was a waterfront lot and that a boat dock could be built to the water's edge. There was no indication in the record that the seller ever responded to the letter.
On June 21, 1988, the Frys sued the seller for rescission based upon fraudulent misrepresentation and for an equitable lien in the amount of the deposit. In the final judgment, the court made a finding of fact that "Defendant, through its sales person, did refer to the lot as a lakefront lot to the Plaintiffs prior to purchase." This did not deter the court from further finding that, "in light of other evidence and representations surrounding the transaction, this was not a material representation."
We must determine whether the trial court erred in denying the rescission after finding specifically that, prior to execution of the agreement for sale and purchase, the Jones Company represented the lot to be a waterfront lot and finding that it was not a material misrepresentation. The elements of a fraudulent misrepresentation were set forth in Johnson v. Davis, 480 So.2d 625 (Fla. 1985):
1. A false statement concerning a material fact.
2. The representor's knowledge that the representation is false.
3. An intention that the representation induce another to act on it.
4. Reliance by the plaintiff and subsequent injury to the plaintiff.
The trial court in the instant case found that the Jones Company referred to lot 7 as a waterfront lot in response to inquiries made by the Frys before they entered into the purchase agreement. The seller's vice-president, Larry Toler, testified that there were no lakefront lots in the subdivision and defined a lakefront lot as one that "goes to the water" and has complete and direct access to the lake. That definition indicates Scott made the representation when she knew or should have known of its falsity. Joiner v. McCullers, 158 Fla. 562, 28 So.2d 823 (1947). Further, the representation *903 that the lot was waterfront was made with the knowledge that the Frys intended to purchase only a waterfront lot and that they would rely on that representation after they had questioned Scott specifically about the lines separating lot 7 from the lake. In deciding the materiality of whether lot 7 was a waterfront lot, it is unimportant whether governmental authorities indicated, after the Frys requested the return of their deposit, that a boardwalk could be constructed across the conservation area to gain access to the lake. The boardwalk may have given access to the lake but would not serve to create a waterfront lot. It was unrebutted that the Frys would not have paid the $20,000 premium nor even have entered into the transaction but for the representation of Scott that lot 7 was a lakefront lot.
The Frys could be precluded from recovery for a fraudulent misrepresentation if the falsity was obvious to them. Besett v. Basnett, 389 So.2d 995 (Fla. 1980). In Besett, the court adopted the principle of law as expressed in sections 540 and 541 of the Restatement of Torts (1976):
We hold that a recipient may rely on the truth of a representation, even though its falsity could have been ascertained had he made an investigation, unless he knows the representation to be false or its falsity is obvious to him.
We believe that the Frys were justified in relying upon Scott's explanation of the site plan's deceptively small hiatus between the line shown as the edge of the lot and the lake. Such reliance might have been unjustified if the subdivision plat (a partial copy of which is shown in appendix "B" to this opinion) had been exhibited to the Frys before the agreement was entered. The Jones Company chose not to include this revealing display in its explanation of the hiatus when inquiry was made by the Frys. The Frys were justified in requesting the return of their deposit. The Frys would not have received the benefit of a waterfront lot if they had continued to closing.
The court's refusal to impose an equitable lien was dependent upon its determination that no material misrepresentation had been made. Therefore, based on this court's finding that a fraudulent misrepresentation had indeed been made, we reverse and remand for reconsideration of the issue of the equitable lien raised in Count II. The award of damages under Count I for rescission renders moot Count III for unjust enrichment since only the return of the deposit was requested in the latter count.
The final judgment is vacated with instructions to enter judgment for the Frys as to Count I of the Second Amended Complaint, to determine the rights of the parties under Count II of the Second Amended Complaint, to determine the Frys' right to attorneys' fees, and to award prejudgment interest and taxable costs.
REVERSED and REMANDED.
COBB and GOSHORN, JJ., concur.
*904 
*905