568 So.2d 512 (1990)
Donald SPARKS and Jacqueline Sparks, Petitioners,
v.
The CHARLES WAYNE GROUP, et al., Respondents.
No. 90-609.
District Court of Appeal of Florida, Fifth District.
October 19, 1990.
*513 Stephen E. Hilker, Palatka, for petitioners.
J. Lester Kaney, of Cobb, Cole & Bell, Daytona Beach, for respondents.
W. SHARP, Judge.
Donald and Jacqueline Sparks seek certiorari review by this court of the trial court's order discharging a lis pendens they filed against a house and lot located in Flagler County, Florida. The trial court apparently granted the discharge because the record and pleadings did not establish that the Sparkses were entitled to claim and enforce an equitable lien against the property. We disagree and reverse.
*514 Respondents, The Charles Wayne Group Ltd., J. Wayne Beighle, and The Charles Wayne Group, Inc., initially argue the district court of appeal lacks certiorari jurisdiction to review the order discharging the lis pendens. We are bound by Baghaffar v. Story, 515 So.2d 1373 (Fla. 5th DCA 1987) which holds otherwise.[1] If the record established that the petitioners had grounds to assert an equitable lien against real property, the trial court departed from the essential requirements of the law by failing to continue the lis pendens, conditioned upon the filing of a bond by petitioners in an amount sufficient to protect respondents against any damages resulting from its wrongful continuance.
The pleadings and record below establish that the Sparkses sued the respondents for damages, the return of purchase money deposits plus interest, and the establishment of an equitable lien against the property for the sums paid under an executory real estate contract to the seller, The Charles Wayne Group, Ltd. The Sparkses had entered into a contract with the Group (the seller and owner) to purchase a home to be built on a lot for them by Beighle, the general contractor. The total purchase price was $126,055.00.
The Sparkses alleged they paid respondent Group $1,000.00 when the contract was signed. They paid an additional $37,528.00 when construction commenced. An additional $37,527.00 was due at dry-in of the windows and exterior doors, and the balance at closing. Respondents agreed and promised to build an above-average quality house like the model shown to the Sparkses, and it was to meet the specifications called for in the plans attached to the contract.
As construction of the house got underway, the Sparkses noted with increasing alarm various material defects and deficiencies in the construction of the house, and the builder's failure to follow the plans in material respects. They retained a building inspector to advise them, and the results of his ongoing inspections were sent to respondents. The Sparkses alleged that despite these efforts, the respondents did not correct the material discrepancies and deficiencies.
Respondents demanded that the Sparkses pay the balance owed on the contract. When they refused, respondents declared the Sparkses in default, and they took the position that the total sum of $38,528.00 previously paid by the Sparkses had been forfeited. This lawsuit was then filed by the Sparkses, claiming breach of contract, misrepresentation, failure of consideration, and the establishment of an equitable lien to secure return of the deposits paid on the contract. In addition, they filed a lis pendens against the property in Flagler County.
Pursuant to section 48.23(3), Florida Statutes (1989), when the pleading in a law suit shows the cause of action is not founded on a duly recorded instrument or on a mechanic's lien, "the court may control and discharge the notice of lis pendens as the court may grant and dissolve injunctions." The Sparkses' suit admittedly was not founded on a recorded instrument, nor on a mechanic's lien. The respondents moved to dissolve the notice of lis pendens, but offered no evidence or proof of irreparable injury. The issue in this case is whether the record establishes a prima facie basis to declare and enforce an equitable lien against the property for the sums paid under the contract by the Sparkses to the respondents.
At the hearing on the motion to dissolve, only the petitioners' pleadings, affidavits and exhibits were in the record. Respondents had filed no pleadings other than motions to discharge the notice of lis pendens. Significantly, respondents had not moved to dismiss the Sparkses' count for an equitable lien on the property. At the hearing, no testimony or evidence was presented by either party. The transcript contains only unsworn argument of counsel.
It appears from reading the transcript of the hearing that specific language used in *515 the contract calling the sums paid by the Sparkses "deposits" and a further contractual provision limiting the Sparkses' remedy, if the respondents breached, to recovery of the deposits, were the sole basis for the trial court's conclusion that the Sparkses were limited to obtaining a money judgment. In paragraph 3 of the contract, the Sparkses' payments are called "deposits." In paragraph 13 of the contract, the buyer (the Sparkses) authorized respondents (the Group) "to place the Deposit paid this date and all other payments made pursuant to this Agreement, in Seller's account." And Paragraph 12 limited the Sparkses' remedies against the Group, if the seller defaulted, to a return of the deposits.
At the hearing, counsel for respondents argued that the deposits were held by the Group in escrow or trust accounts. But nothing in the contract supports that view.[2] Later in the hearing, counsel for respondents candidly admitted he did not know how the deposits were actually held after being put into the Group's general account.
Equitable liens in property, both personal and real, may arise under a variety of different circumstances. In some, the parties are shown to have intended to grant an interest in the nature of a lien; and in others, the court devises an equitable lien without regard to the parties' intent, based on the facts and circumstances. Hullum v. Bre-Lew Corp., 93 So.2d 727 (Fla. 1957).[3]
Whatever category a purchaser under an executory contract to buy real estate may be in, the great weight of authority holds that such a purchaser (who is not in default) is entitled upon default by the seller to rescind the contract, recover all purchase monies paid and interest, plus other expenses, and to claim and enforce an equitable lien against the property to secure the purchase payments made. See Fry v. J.E. Jones Construction Co., 567 So.2d 901 (Fla. 5th DCA 1990). The only requirement is that the buyer must establish his right to recover the money paid on the contract.[4] The rationale for recognizing a purchaser's lien is partly premised on the doctrine of equitable conversion. 77 Am.Jur.2d Vendor and Purchaser §§ 513; 514 (1975).
Thus, as a vendee makes payments on a land contract the vendor becomes trustee for him of the legal estate, and he becomes in equity the owner of the land to the extent of payments made.
77 Am.Jur.2d Vendor and Purchaser § 317 (1975). Other authorities identify the vendee's lien as the remedy corresponding to that afforded the unpaid vendor who has conveyed title to the vendee.[5]
The vendee's lien is one remedy afforded a purchaser under an executory real estate contract to secure repayment of the sums paid to the seller. It no longer matters (with the merger of law and equity) whether the cause of action is for rescission or damages. Nor does it matter whether or not an improvement has been built on the realty using the purchaser's funds. 77 Am.Jur.2d Vendor and Purchaser § 492 (1975). Compare Wagner v. Roberts, 320 So.2d 408 (Fla. 2d DCA 1975), cert. denied, 330 So.2d 20 (Fla. 1976). Further, the vendee's lien does not arise as the result of any express contract. It is a right which may be said to have been invented for the purpose of doing justice. Annotation, Right of Vendee Under an Executory Land Contract to a Lien for *516 Amount Paid on Purchase Price, 45 A.L.R. 352, 356 (1926).
Florida cases have long recognized a vendee's equitable lien for nondefaulting purchasers under real estate contracts. In Wolfe v. Daugherty, 103 Fla. 432, 137 So. 717 (1931), the Florida Supreme Court held that a vendee under an executory real estate contract has an equitable lien in the subject real estate to the extent of the purchase price paid, if the vendee is not in default.[6] Significantly in Wolfe, as in the instant case, the purchaser was limited under the contract to the return of his purchase money deposits. When the vendor defaulted and did not return the deposits, the court ruled the vendee was entitled to claim an equitable vendee's lien for the amount of the monies paid.
In John Ringling Estates v. White, 105 Fla. 581, 141 So. 884 (1932), the court denied a purchaser an equitable lien because he had only an "option," rather than a contract. However, the court discussed the equitable lien remedy as but one of several which a vendee may pursue:
Upon breach of the contract, if it was breached, by the vendor, complainants had the right to affirm the contract and sue the vendor for damages or to disaffirm the contract, and bring an action at law to recover back the payment that had been made, but they were not confined to those remedies. They had the right, at their election, to ask for a rescission and cancellation of the contract, and to adjudication of a lien against the property described in the contract for the amount of the initial payment made thereunder, ... .
Id., 141 So. at 885.
More modern Florida cases recognize a non-defaulting vendee's lien against the subject property, for the purchase monies paid. In Resnick v. Goldman, 133 So.2d 770 (Fla. 3d DCA 1961), the buyer rescinded the contract and sought to recover his deposits. The court upheld his vendee's lien against the property.
Equity takes cognizance of suits for rescission of executory contracts to convey and a claim by a purchaser for return of a down payment under such a contract is properly brought in equity where to aid recovery a lien may be claimed and imposed on the property involved.
Id. at 771.
Respondents argue that the general rule giving a non-defaulting vendee an equitable lien to the extent of the purchase price paid does not apply here because the Sparkses, under the contract, were restricted to a money judgment or a return of the deposits. Sparkses should or should not have a lien to secure the return of their deposits. Respondents' right to satisfy their default by paying money does not defeat the Sparkses' right to security of a lien protected by lis pendens any more than a mortgagor's right to satisfy with cash means a mortgagee is not entitled to the security of a lis pendens. Baghaffer, 515 So.2d at 1374. A vendee's lien is recognized in all kinds of rescission cases where the vendee is not in default, including those where the vendee's only remedy under the contract is to recover purchase money paid. 45 A.L.R. 353, 369 (citing Wilson v. Sunnyside Orchard Co., 33 Idaho 501, 196 P. 302 (1921).
Harbour Village at Saga Bay, Inc. v. Dahm, 367 So.2d 1100 (Fla. 3d DCA 1979) is distinguishable and provides the exception to the rule. In Harbour Village, the purchaser paid purchase money deposits in the form of a letter of credit, to be held in escrow in an interest bearing account by the seller, as security for payment of the balance of the purchase price. At the time of the law suit, the buyer's only remedy under the contract (as in this case) was to recover the purchase price paid. But the record established the buyer had sole control and possession of the deposit. The court held "where there is no longer a debt or duty owing, no lien can be claimed." In the instant case, the record establishes that respondent Group has the sole control and *517 possession of the Sparkses' purchase money deposits.
Based upon the pleadings herein (no evidence having been presented), the sellers owe the Sparkses a debt and a duty. Allegedly the owner-sellers wrongfully declared the Sparkses in default and forfeited their purchase money deposits. This is enough to create an equitable lien to secure a return of the deposits.[7] The equitable lien arises to secure a return of the deposits even though under the contract the Sparkses are limited to seeking only a return of their deposits.
If respondents can establish some exceptional facts, as in Harbour Village, they may be entitled to dissolve the lis pendens. But, they have the burden to establish that the notice of lis pendens is inappropriate under the circumstances and for the cause of action alleged in the complaint. Cacaro v. Swan, 394 So.2d 538 (Fla. 4th DCA), rev. dismissed, 402 So.2d 608 (Fla. 1981). Respondents have made no attempt to do so here.
The dissent argues that the burden of proof at the hearing on the motion to dissolve was on the Sparkses. However, that is exactly backwards from judicial hearings in general where the burden is placed on the moving party, and it is a misstatement of the holding in Cacaro, 394 So.2d at 540. Cacaro is now the leading case on section 48.23(3) for cases not involving recorded instruments. See Bailey v. Hough, 441 So.2d 614 (Fla. 1983). In Cacaro, the court said:
[T]he burden was on the moving party to establish that the lis pendens was inappropriate to the circumstances and cause of action stated in the complaint.
Cacaro, 394 So.2d at 540.
The language in section 48.23(3) regarding dissolving lis pendens like "injunctions" is somewhat ambiguous. But this language fails to provide a basis to cogently argue that a party seeking to file a lis pendens must skip through all of the procedural hoops necessary to obtain an injunction against deeding out property. A hearing and notice in advance of filing need not be obtained.[8]
The only relevance of the injunction language is that a party filing notice of lis pendens can be required to post a bond, if a recorded instrument or mechanic's lien is not involved. Mohican Valley Ins. v. MacDonald, 443 So.2d 479 (Fla. 5th DCA 1984). Similar to an injunction, a lis pendens has the potential of causing the owner irreparable injury if wrongfully sued. The bond protects the land owner from a wrongful suit and any damage insuing from the notice. Mohican Valley; Porter Homes. However, before a bond is required the land owner must show that he will suffer irreparable harm in the event the lis pendens is unjustified and also "the value of the property encumbered by the lis pendens." C.W. Bailey v. Rolling Meadows Ranch, Inc., 566 So.2d 63 (Fla. 5th DCA 1990). See also Feinstein v. Dolene, Inc., 455 So.2d 1126 (Fla. 4th DCA 1984).
Clearly, the person filing the notice of lis pendens to protect a valid equitable lien need not in addition show irreparable injury or inadequate remedy at law, as suggested by the dissent. One hundred years of equity jurisprudence has decreed that the only way to protect an unrecorded equitable lien in real property is to file a notice of lis pendens. 35 Fla. Jur.2d Lis Pendens § 1. The function of the notice is to preserve the lien against intervening liens or purchasers pending completion of the law suit. Statewide Construction, Inc. v. Dowda, 424 So.2d 198 (Fla. 5th DCA 1983). No other adequate remedy is available to a vendee-plaintiff in such a case. It would be redundant *518 to require him to establish "irreparable injury" or "inadequate legal remedy."
The need for the lis pendens in this case was well illustrated by respondents' attorney's assertion at the hearing that the Group had another contract on the property, and was anxious to close it. Without the protection of the lis pendens, the Sparkses' equitable lien remedy to secure their purchase money paid under the contract could be wiped out by a sale to a subsequent bona fide purchaser. Id. Since the Sparkses have no other adequate means to protect their vendee's lien, denying them that protection was a departure from the essential requirements of law.
Because the Sparkses have pled a claim and a cause of action consistent with granting them an equitable lien in the property to secure their purchase monies paid to respondent Group, they are entitled to file a lis pendens pursuant to section 48.23, Florida Statutes (1989), to protect their unrecorded interest. The function of the lis pendens is to give constructive notice to subsequent purchasers who might take title or an interest in the land and defeat the unrecorded equitable lien.[9]
Accordingly, we quash the order of the circuit court and remand this cause to the trial court for a determination of the amount of a reasonable bond to be required.
WRIT ISSUED.
DANIEL, C.W., Judge, Retired, concurs.
COBB, J., dissents with opinion.
COBB, Judge, dissenting.
I cannot agree that the issue here is whether the record establishes a prima facie basis for enforcement of an equitable lien. The issue is whether the trial court, in discharging the plaintiffs' notice of lis pendens, abused its discretion to an extent warranting certiorari review by this court.
The plaintiffs' initial pleading did not show that their action was founded on a duly recorded instrument or on a mechanic's lien; therefore, the trial court could control and discharge the notice of lis pendens just as it could grant and dissolve injunctions. See § 48.23(3), Fla. Stat. (1989). For purposes of analysis, then, a notice of lis pendens should be construed to ensure that the safeguards applicable to injunctions are applicable to a lis pendens. Under the statute, as I read it, the proponent of a notice of lis pendens based upon an unrecorded contract must justify its continuation at the evidentiary hearing held on the motion to dissolve the notice. See DeLisi v. Smith, 401 So.2d 925 (Fla. 2d DCA 1981). The proponent must show (1) irreparable harm, (2) an inadequate remedy at law, and (3) a substantial likelihood of success on the merits. Satellite Development Corporation v. Tortoise Island Homeowners Association, Inc., 487 So.2d 1157 (Fla. 5th DCA 1986); Florida Land Company v. Orange County, 418 So.2d 370 (Fla. 5th DCA 1982). The mere allegation of a cause of action for an equitable lien does not translate into an automatic right to injunctive relief (i.e., notice of lis pendens) absent an appropriate evidentiary showing of entitlement to that relief. The mistake of the majority opinion is in the failure to make this distinction.
In the instant case, no formal evidence whatsoever  no testimony, no depositions, no interrogatories, no affidavits, no sworn complaint, no stipulated record  was presented to the trial court at the evidentiary hearing. The parties, through counsel, apparently agreed that the alleged contract existed. Thus, there was no showing by the proponent plaintiffs of irreparable harm, an inadequate remedy at law, a substantial likelihood of success on the merits, or anything else. Given this dearth of evidence, I cannot agree that the trial court's order discharging the notice of lis pendens constitutes a departure from the essential requirements of law which causes material *519 injury throughout the lawsuit, leaving no adequate remedy by appeal. Martin-Johnson, Inc. v. Savage, 509 So.2d 1097 (Fla. 1987).
This court observed in Baghaffar v. Story, 515 So.2d 1373 (Fla. 5th DCA 1987), that there is no justification for burdening the alienability of property with a lis pendens where complete relief is available to the plaintiff against a solvent defendant. Baghaffar at 1374, n. 2; see also Beefy King International, Inc. v. Veigle, 464 F.2d 1102 (5th Cir.1972). In this case there is no contention by the plaintiffs, much less any proof, that the defendant Wayne cannot fully respond to any money judgment.
The trial court correctly dissolved the notice of lis pendens filed below, and certiorari should be denied.
NOTES
[1] See also, Porter Homes, Inc. v. Soda, 540 So.2d 195 (Fla. 2d DCA 1989); James v. Wolfe, 512 So.2d 954 (Fla. 2d DCA 1987). But see, Munilla v. Espinosa, 533 So.2d 895 (Fla. 3d DCA 1988).
[2] The language used in the contract in this cause is certainly in contrast with that required by section 501.1375, Florida Statutes (1989), if it were applicable. The statute requires express notice to buyers of their right to require deposits to be put in a specific type of escrow account, with restriction on right of the seller to withdraw, and requirements of a surety bond to secure the deposits will be intact.
[3] See 34 Fla.Jur.2d Liens § 7 (1982).
[4] 44 Fla.Jur.2d, Real Property Sales and Exchange § 217 (1984); 77 Am.Jur.2d Vendor and Purchaser § 514 (1975); Annotation, Right of Vendee Under an Executory Land Contract to a Lien for Amount Paid on Purchase Price, 45 A.L.R. 352 (1926); Annotation, Right of Vendee Under an Executory Land Contract to a Lien for Amount Paid on Purchase Price, 33 A.L.R.2d 1384 (1954).
[5] IV Pomeroy's Equity Jurisprudence § 1263 (1941).
[6] See also O'Steen v. Thomas, 146 Fla. 73, 200 So. 230 (1941); Rosen v. Dorn-Kothe, Inc., 126 Fla. 717, 171 So. 646 (1936); Tuttle v. Ehrehart, 102 Fla. 1129, 137 So. 245 (1931).
[7] "Where the seller is in default under an executory contract... the purchaser ordinarily may recover payments or deposits made on the contract, where he himself is not in default, and the purchaser is deemed to have a lien on the real property that is the subject of contract to secure the repayment of that money." (emphasis supplied) 44 Fla.Jur.2d Real Property Sales & Exchanges § 215 (1984).
[8] Hough v. Bailey, 421 So.2d 708 (Fla. 1st DCA 1982), rev. denied, 441 So.2d 614 (Fla. 1983); Cacaro v. Swan, 394 So.2d 538, 539 (Fla. 4th DCA), rev. dismissed, 402 So.2d 608 (Fla. 1981).
[9] However, it is not necessary if the subsequent purchaser has actual notice. Westburne Supply, Inc. v. Community Villas Partners, Ltd., 508 So.2d 431 (Fla. 1st DCA 1987); Caribank v. Frankel, 525 So.2d 942 (Fla. 4th DCA 1988). Annotation, Vendee's Lien for Price Paid, 82 A.L.R.3d § 1040 (1978); 35 Fla.Jur.2d Lis Pendens § 2 (1982).