**In re ECOVENTURE WIGGINS PASS, LTD., Aqua at Pelican Isle Yacht Club Marina, Inc., Pelican Isle Yacht Club Partners, Ltd., Debtors.**

Nos. 9:08–bk–9197–ALP, 9:08–bk–9198–ALP, 9:08–bk–9199–ALP.

United States Bankruptcy Court, M.D. Florida, Ft. Myers Division.

Sept. 18, 2009.

Goodlette Coleman Johnson Yovanovich Koester, Naples, FL, Daniel R. Fogarty, Harley E. Riedel, Stephen R. Leslie, Stichter, Riedel, Blain & Prosser, P.A, Tampa, FL, for Debtors.

## ORDER ON OBJECTIONS TO SECURED PORTION OF CLAIMS

ALEXANDER L. PASKAY,
Bankruptcy Judge.

**THIS CASE** came before the Court to consider the Debtor's Objections to the Secured Portion of certain claims asserted in this case. The Claimants are parties who had entered into contracts to purchase condominium units or related property from the Debtors prior to the filing of the Chapter 11 Petition.

In the Objections, the Debtor requests that the Court disallow the claims to the extent that they are asserted as claims secured by an interest in real property. Alternatively, the Debtor requests that the Court estimate the claims at zero pursuant to § 502(c) of the Bankruptcy Code.

### Background

The Debtor is the developer and owner of a luxury waterfront condominium complex known as the "Aqua at Pelican Isle Yacht Club" in Naples, Florida. The complex includes a residential tower, together with an adjacent marina and dock facility.

Financing for the project was initially provided by a group of lenders led by Regions Bank, which loaned approximately $100 million to the Debtor to develop and construct the condominium units and facilities.

Specifically, on December 19, 2006, the Debtor entered into a Participation Loan Agreement pursuant to which Regions agreed to loan the Debtor up to $110,600,000.00 for the project. To secure the loan, the Debtor granted to Regions first priority mortgages and liens on the Debtor's assets. (Doc. 2, pp. 5–6). The Debtor has stipulated that the loan documents executed with Regions are valid and enforceable, and that Regions held a properly perfected first mortgage lien and se-

curity interest in all of the Debtor's assets as of June 24, 2008. (Doc. 67, p. 4).

In 2006 and 2007, while the project was in development, the Debtor entered into a series of Purchase and Sale Agreements with the Claimants. Generally, the Purchase and Sale Agreements provided that the Claimants would purchase a condominium unit from the Debtor for the purchase price set forth in the respective agreement. The Purchase and Sale Agreements also provided that the Claimants would pay an Earnest Money Deposit to the designated Escrow Agent, generally in an initial amount equal to 10% of the purchase price. Additionally, paragraph 29 of the Agreements provided:

> *SELLER'S MORTGAGE LIEN.* Buyer acknowledges that the Unit may be encumbered by one or more mortgages at the time of the Closing.... Buyer acknowledges and agrees that to the extent permitted under applicable law (including, without limitation, the Condominium Act), the lien of any mortgage(s) granted by Seller to its lender(s) (whether or not such loans are made for the purpose of construction financing) on the Unit or the Condominium shall be superior in right and priority to any lien of Buyer as contract vendee or otherwise and that this provision shall be self-operating, not require execution and delivery of additional documents and be for the benefit of the Seller and any such lenders....

According to the Debtor, each of the Purchase and Sale Agreements executed by the Claimants is a "standard form" agreement as promulgated in accordance with the Florida Condominium Act. (Doc. 306, pp. 8–9).

Shortly after the Claimants executed the Purchase and Sale Agreements, or on the same date, they also executed separate agreements with the Debtor that are generally referred to as Accommodation Agreements. Each Accommodation Agreement related to the same condominium unit that was the subject of a Purchase and Sale Agreement. Among other terms, the Accommodation Agreements generally provided that the Claimants would deposit an Earnest Money Deposit with the Escrow Agent in an amount equal to 20% of the purchase price.

On June 24, 2008, the Debtor filed a Petition under Chapter 11 of the Bankruptcy Code. The condominium complex was not completely constructed as of the Petition date. On the same date, therefore, the Debtor also filed an Emergency Motion for Authority to Obtain Post–Petition Financing and Grant Senior Liens, Superpriority Administrative Expense Status and Adequate Protection Pursuant to 11 U.S.C. §§ 364(c) and (d) of the Bankruptcy Code and F.R.B.P. 4001. (Doc. 2). The purpose of the requested post-petition financing was to enable the Debtor to complete the construction of the project.

On July 25, 2008, the Court entered a Final Order on the Debtor's Emergency Motion for Authority to Obtain Post–Petition Financing (the DIP Financing Order). (Doc. 67). The DIP Financing Order provided that the Debtor was authorized to borrow up to $26.1 million from Cypress Lending Group, as the DIP Lender. The DIP Financing Order also provided:

> 3. Pursuant to § 364(d), the DIP Loan shall be secured by first priority senior mortgages on, security interests in, and liens upon all assets of the Debtors and their estates and shall prime and be senior in priority to the prepetition liens in favor of Regions as the Prepetition Lender and all other parties having or asserting an interest in the collateral.

(Doc. 67, p. 6). Additionally, the DIP Financing Order provided that any party

objecting to the extent, validity, or priority of Regions' liens must file an objection within thirty (30) days of the date of the Order, and that "[i]n the absence of a timely objection, the liens of Regions shall be conclusively determined to encumber all assets of the Debtors, subject only to the DIP Lien and ad valorem real estate taxes." (Doc. 67, p. 15).

In December of 2008, the Debtor completed the construction of a residential tower. A certificate of occupancy was granted for the tower on December 31, 2008.

On May 13, 2009, the Court entered three Orders regarding the Debtor's proposed assumption of the Purchase and Sale Agreements and related Accommodation Agreements that had been entered with the Claimants. (Docs. 415, 416, and 417). In the Orders, the Court found that each Purchase and Sale Agreement and its corresponding Accommodation Agreement constituted a single, integrated contract between the parties, and that the Debtor was not permitted to sever and assume only a portion of the parties' total agreement. Additionally, the Court found that the Purchase and Sale Agreements entered with James R. Owens and Steven Siegfried had been effectively terminated prior to the filing of the Debtor's bankruptcy Petition. (Docs. 416, 417).

On July 30, 2009, the Court entered an Order granting the Debtor's Motion to Reject Executory Contracts with Accommodation Parties. (Doc. 559). In the Order, the Court determined that the agreements between the Debtors and the Claimants were rejected, and that the Claimants were required to file a Proof of Claim for any claim of any nature arising under the agreements and/or the Debtor's rejection of the agreements.

Approximately fifteen claims have been filed by the Claimants. Generally, the Claimants assert that the Earnest Money Deposits that they paid pursuant to the Purchase and Sale Agreements with the Debtor should be returned to them. Additionally, the Claimants assert that they may have equitable vendees' liens against the particular units that were the subject of the Agreements. See, for example, Claim Number 36–2, filed by Jake M. Shirley, in which Shirley asserts:

To the extent any amount of the Deposit (or interest thereon) is not returned or refunded, Shirley asserts an equitable vendee's lien and/or constructive trust in favor of Shirley on Unit 607 (and to the extent available under any applicable law) .... Based on the rejection of the 607 Transactions, Shirley claims a lien in the Debtor's interest in the Unit and/or the Property to recover the full amount of the Deposit (and any other amounts that may be paid or claimed by the Debtor with respect to any additional deposit amounts including any claims to any letter of credit proceeds).

(Claim 36–2, Attachment, p. 2). On the face of the claim, Shirley asserts that the claim is a secured claim based in part on an equitable or vendee's lien, or a lien under § 365(j) of the Bankruptcy Code.

The Debtor has filed written Objections to the secured portion of the claims. According to the Debtor, its objections relate only to any liens claimed by the Claimants against the condominium units that were the subject of the Purchase and Sale Agreements, and not to the interests asserted by the Claimants in their deposits. The Debtor contends, for example, that "[t]o the extent that Claimant asserts a secured claim in the amounts on deposit, and not a claim secured by an interest in real property, such claims are preserved under the Plan and are not the subject of this Objection." (See Doc. 568, p. 2).

The Debtor objects to any equitable or vendee's lien asserted by the Claimants in the condominium units, however, based on the value of the underlying property. Specifically, the Debtor contends:

It is uncontested, and there have been no substantive objections or challenges to the fact, that the outstanding principal amounts owing to Cypress is approximately $15 million, and the outstanding principal amounts owing to Regions is approximately $86 million. As reflected in the affidavit attached to the Notice of Filing Affidavit/Affidavit of Jeff J. Boyle (Doc. 536), the appraisal report admitted into evidence, and the testimony of Mr. Boyle, the value of the real property is $65,200,000, significantly less than the $101,000,000 in total principal amount of the claims.

(See Doc. 568, p. 3). Consequently, the Debtor asserts that the secured portion of the claims should be disallowed, because "there is no value above the amounts owed to Cypress and Regions, and pursuant to § 506 of the Bankruptcy Code no portion of the Claim is entitled to treatment as a secured claim." (See Doc. 568, p. 3).

## Discussion

As set forth above, the Debtor's Objections do not relate to the claims asserted by the Claimants for the return of their deposits. According to the Debtor, the claims with respect to the deposits are preserved by the Plan for adjudication in separate proceedings. Instead, the Debtor objects solely to the Claimants' contention that their claims are secured by an interest in the condominium units that were the subject of the Purchase and Sale Agreements.

### I. Vendees' liens

To the extent that their deposits are not returned or refunded by the Debtor, the Claimants assert an equitable vendee's lien in the units described in the Purchase and Sale Agreements.

Under Florida law, "a vendees' lien is a remedy afforded a purchaser under a real estate contract to secure repayment of sums paid to the seller." *Parra v. Minto Town Park, LLC*, 2008 WL 4773272, at *4 (S.D.Fla.2008)(citing *Sparks v. Charles Wayne Group*, 568 So.2d 512, 515 (Fla. 5th DCA 1990)). A vendee's lien is not created by the express terms of the contract. It is a right that is recognized "for the purpose of doing justice," and may arise even if the contract limits the purchaser to a return of its deposit. *Sparks v. Charles Wayne Group*, 568 So.2d at 515–17. In order to claim an equitable lien to secure any payments made to the seller, the purchaser is only required to establish his right to recover the money paid under the contract. *Posnansky v. Breckenridge Estates Corporation*, 621 So.2d 736, 737 n. 2 (Fla. 4th DCA 1993) (citing *Sparks*, 568 So.2d at 515).

In this case, it appears undisputed that the Claimants entered into Agreements with the Debtor to purchase condominium units or related property in the Debtor's complex, and that they tendered earnest money deposits to the Escrow Agent designated in the agreements. (See Doc. 534, Exhibit 5, Confirmation Affidavit, Summary of Deposits). It also appears undisputed that the Debtor rejected all pending executory contracts for the purchase and sale of the condominium units pursuant to the Order Granting Motion to Reject Executory Contracts with Accommodation Parties that was entered on July 30, 2009. (Doc. 559).

Under Florida law, therefore, the Claimants may be entitled to assert equitable vendees' liens against the condominium units, to the extent that they can establish

their right to recover the deposits paid under the contracts. See also 11 U.S.C. § 365(j), which provides that a purchaser not in possession, whose contract has been rejected by a debtor, has a lien on the debtor's interest in the subject property for the recovery of any portion of the purchase price paid by the purchaser.

## II. The subordination provisions

The Claimants may be entitled to assert equitable vendees' liens against the condominium units that were the subject of the Purchase and Sale Agreements. The next issue, therefore, involves the priority of the equitable liens asserted by the Claimants in relation to the secured claims of Cypress Lending and Regions Bank.

As a general rule, contracting parties are free to agree as to their respective rights and remedies in the event of default by the other party. "Generally, where the parties to a contract have agreed upon a remedy in the event of a breach, their agreement will control, provided the remedy is 'mutual, unequivocal and reasonable.'" *Seaside Community Development Corporation v. Edwards*, 573 So.2d 142, 147 (Fla. 1st DCA 1991).

A purchaser may agree, for example, that he may not recover any damages from the breaching seller beyond the amount of his deposit and any established out-of-pocket expenditures. *Ament v. One Las Olas, Ltd.*, 898 So.2d 147, 151–51 (Fla. 4th DCA 2005). Similarly, a purchaser may agree that he will not assert a claim of lien against the property as a result of any dispute stemming from the purchase and sale agreement. *Parra v. Minto Town Park, LLC*, 2008 WL 4773272, at *4 (S.D.Fla.2008).

In this case, the Claimants acknowledged in the Purchase and Sale Agreements that the Debtor's condominium project may be encumbered by an existing mortgage. The Claimants further agreed that:

> [T]he lien of any mortgage(s) granted by Seller to its lender(s) (whether or not such loans are made for the purpose of construction financing) on the Unit or the Condominium *shall be superior in right and priority to any lien of Buyer as contract vendee* or otherwise.

(Purchase and Sale Agreements, Paragraph 29) (Emphasis supplied). This provision regarding the priority of the existing mortgage was "for the benefit of Seller and any such lenders."

Additionally, in paragraph 36 of the Purchase and Sale Agreements, the Claimants agreed that their rights under the contract were "expressly subordinated to the rights and interests of any institutional lender which extends financing in connection with the Condominium."

To the extent that they may be entitled to assert equitable vendees' liens against the condominium units, therefore, the Claimants specifically agreed that the equitable liens would be subordinate to any existing mortgage granted by the Debtor. Such agreements are generally enforceable under Florida law.

In *Posnansky v. Breckenridge Estates Corporation*, 621 So.2d 736 (Fla. 4th DCA 1993), for example, a purchaser asserted a vendee's lien after the seller defaulted under their contract. The purchaser subsequently sought to foreclose the lien, and an issue in the foreclosure action involved the relative priority of the purchaser's lien as against an existing mortgage held by Glendale Federal Bank. The Court ruled in favor of Glendale, noting that the purchaser had executed an agreement to subordinate any interest he had under the contract to Glendale's mortgage, and stating that the agreement was "dispositive" of

the priority issue. *Posnansky,* 621 So.2d at 737.

■ In the case before the Court, the Claimants agreed that any existing mortgage would be "superior in right and priority" to their vendees' liens. The terms of the Purchase and Sale Agreements govern the Claimants' rights upon the Debtor's rejection of the contracts. The equitable vendees' liens are subordinate to the mortgage lien held by Regions Bank.

■ This conclusion is not altered by the effect of § 365(j) of the Bankruptcy Code. As indicated above, § 365(j) provides that a purchaser not in possession, whose contract is rejected by the debtor, has a lien on the debtor's interest in the property for the recovery of any portion of the purchase price paid by the purchaser. 11 U.S.C. § 365(j). It is generally recognized, however, that the provision does not "give holders of § 365(j) liens any special treatment other than to create the lien in the first place," and "does not alter the otherwise applicable priorities among secured creditors." *Aetna Bank v. Dvorak,* 176 B.R. 160, 163–64 (N.D.Ill.1994). See also *In re Levitt and Sons, LLC,* 2008 WL 2783154, at *5 (Bankr.S.D.Fla.2008) (The lien created by § 365(j) "has the lowest priority of all security interests in the bankruptcy estate.").

## III. The property's value

■ The Court has found that the Claimants may be entitled to assert equitable vendees' liens against the condominium units that were the subject of the Purchase and Sale Agreements. The Court has also found, however, that any such equitable vendees' liens asserted by the Claimants are subordinate to the mortgage lien of Regions Bank.

The liens are also junior to the mortgage held by Cypress Lending Group as a result of its DIP Loan.

On July 25, 2008, the Court entered a Final Order on the Debtor's Emergency Motion for Authority to Obtain Post–Petition Financing. (Doc. 67). In the DIP Financing Order, the Court authorized the Debtor to borrow up to $26.1 million from Cypress Lending Group, as the DIP Lender. The Order further provided that the DIP Loan "shall be secured by first priority senior mortgages" on all of the Debtor's assets, and "shall prime and be senior in priority to the prepetition liens in favor of Regions as the Prepetition Lender and all other parties having or asserting an interest in the collateral."

The amount currently owed to Cypress Lending with respect to the DIP Loan exceeds the sum of $15,344,915.47. (Doc. 619).

The amount currently owed to Regions Bank with respect to its prepetition mortgage is approximately $86,356,328.00. (Doc. 534, Exhibit 1).

Regions Bank engaged Jeff J. Boyle, a certified general appraiser, to perform an appraisal of the Debtor's condominium complex. According to Boyle, he evaluated the property "in conformity with all applicable standards related to commercial appraisals," and concluded that the value of the condominium project as of June 9, 2009, was $65,200,000.00. (Doc. 536).

The aggregate amount of the mortgage liens held by Cypress Lending Group and Regions Bank exceeds the sum of $101,701,243.47 ($15,344,915.47 + $86,356,328.00 = $101,701,243.47). The value of the property as of June 9, 2009, according to a certified appraiser, is $65,200,000.00.

Clearly, the mortgages held by the DIP Lender and Regions Bank exceed the val-

ue of the condominium project by approximately $36,501,243.47. Under these circumstances, the Court finds that the value of the property is not sufficient, after considering the senior encumbrances, to support the equitable vendees' liens asserted by the Claimants.

"It is axiomatic that in the situation where creditors who are holders of claims that are secured by liens junior to senior undersecured liens, those junior lien holders are holders of unsecured claims." *In re Cunningham*, 246 B.R. 241, 244 (Bankr. D.Md.2000). See also *In re Levitt and Sons, LLC*, 2008 WL 2783154, at *5–6 (Bankr.S.D.Fla.2008), in which the Court determined that certain homebuyers were not entitled to an equitable lien on the debtor's development project where there was no equity in the property in excess of the prepetition liens.

In this case, since the total amount of the liens held by Cypress Lending and Regions Bank exceeds the value of the condominium project, the Claimants' claims should be disallowed to the extent that they are asserted as claims secured by an interest in the Debtor's real property.

### Conclusion

The matter before the Court is the Debtor's Objections to the secured portion of certain claims asserted in this case.

The Claimants, as purchasers under the Purchase and Sale Agreements, may be entitled to assert equitable vendees' liens against the condominium units that were the subject of their contracts.

The Claimants expressly agreed in their contracts, however, that the existing mortgage held by Regions Bank was superior in right and priority to any claims that the Claimants might assert as vendees. Additionally, the DIP Financing Order provides that the DIP Loan extended by Cypress Lending Group is secured by a first priority senior mortgage on the condominium project. The aggregate amount of the mortgage liens held by Cypress Lending and Regions Bank exceeds the sum of $101,701,243.47.

The value of the condominium project as of June 9, 2009, is approximately $65,200,000.00.

Consequently, the Court finds that the value of the property is insufficient, after considering the senior encumbrances, to support the equitable liens asserted by the Claimants, and that the Claimants' claims should be disallowed to the extent that they are asserted as claims secured by an interest in the Debtor's real property.

Accordingly:

**IT IS ORDERED** that:

1. The Debtors' Objections to Secured Portion of Claims (Docs. 561, 562, 563, 564, 565, 566, 567, 568, 569, 570, 571, 572, 573, 574, 575, 584, and 586) are sustained as set forth in this Order.

2. Claim Number 18 of Gerald L. Davis and Mary Jane Davis, Claim Number 20 of James R. Owens, Claim 27 of Southeast Financial Services, LLC, Claim Number 31 of Carl Redfield Trust 2000, Dated 10/18/2000, Carl Redfield, Trustee, Claim Number 32 of Jerome A. Hayes, Claim Number 33 of Jerome A. Hayes, Claim Number 34 of Howard F. Molen, Claim Number 35 of Steven Siegfried, Claim Number 36 of Jake Shirley, Claim Number 37 of Jake Shirley, Claim Number 38 of R.J. Shirley, Claim Number 39 of R.J. Shirley, Claim Number 40 of Slip Nine, LLC, Claim Number 41 of Slip Nine, LLC, and the scheduled claims of Carlyle Investments, Inc. and Don Niederpruem are disallowed to the extent that they are asserted as claims secured by an interest in real property.

3. This Order is without prejudice to the right of the Claimants to seek the recovery of the Deposits paid pursuant to the Purchase and Sale Agreements and Accommodation Agreements, and is without prejudice to any claim or right that the Claimants may have to such Deposits.